MARY C. ROSE *vs.* FALL RIVER FIVE CENTS SAVINGS BANK & others.

Bristol. January 22, 1896. — February 26, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Foreclosure of Mortgage — Publication of Notice — Oral Promise to sell Land.*

The Pub. Sts. c. 181, § 17, provide for the publication of notice of foreclosure by sale under a power of sale mortgage in a "newspaper, if there is any, published in the city or town wherein the mortgaged premises are situated." A newspaper called the Dighton Rock, which had the same contents as a newspaper called the Fall River Advertiser, but a different heading and date line, was printed in Fall River, and a few copies of it were sent to Dighton to regular subscribers or for sale and distribution. *Held*, that the newspaper was published in Fall River.

An oral promise by a purchaser at a foreclosure sale under a power of sale mortgage made to the mortgagor before the purchaser has received a deed from the mortgagee, that, if the mortgagor wishes, the purchaser will sell the premises back to the mortgagor for what they cost, does not bind the purchaser by way either of contract or of trust.

BILL IN EQUITY, to set aside a foreclosure by sale under a power in a mortgage, and to redeem. Trial in the Superior Court, before *Hammond*, J., who reported the case for the determination of this court. The facts appear in the opinion.

*J. F. Jackson*, for the savings bank.

*F. Ranney*, for the defendant Monroe.

*A. E. Avery*, for the plaintiff.

HOLMES, J. This is a bill to set aside a foreclosure sale under a power in a mortgage, and to redeem. The ground on which the sale is alleged to be void is that notice of it was not printed in a " newspaper, if there is any, published in the city or town wherein the mortgaged premises are situated," as required by Pub. Sts. c. 181, § 17. The premises are in the town of Dighton. The publication was in the Fall River News. The question is whether there was any newspaper published in Dighton. The paper relied on by the plaintiff was one called the Dighton Rock. It appeared that newspapers all having the same contents, but having different headings and date lines according to the fifteen different towns of their destination, were printed in Fall River, entered at the post office there as second class mail matter, and sent out thence to the different towns. In Fall River the sheet was called the Fall River Advertiser; in other places respectively, the Somerset Times, Freetown Journal, Swansey Record, etc. The Dighton Rock was mailed from Fall River to its thirty regular subscribers, and two or three times as many copies were sent by express to Dighton for sale and distribution. The only fact looking like a domicil in Dighton was that the so called local agent there had over his office door a sign, " Office of the Dighton Rock, Book and Job Printing." But the publishers of the paper paid no office expenses there, and the agent got his pay in commissions upon sales and orders for printing.

We are of opinion that the Dighton Rock was not published in Dighton, and that the foreclosure was valid. Assuming that papers printed from the same type, with or without different names, might be published in different towns within the meaning of the statute, in this instance all the fifteen heads of the hydra had their home in Fall River. The word " published " is used in the statute not quite in the same sense in which it

might be used in libel, but refers to the home office of the paper. There was but one place of management, and the paper was given to the world from there, not only under its other names, but as the Dighton Rock so far as it had regular subscribers. If the views of the parties can be gathered from their stipulations, it is to be observed that the mortgage required publication in a newspaper printed in Fall River.

A rather faint attempt was made to support the bill upon the different ground that the defendant Monroe orally promised the plaintiff that if she wished he would sell the premises back to her for what they cost him, and that she thereupon saw the bank officers for the purpose of enabling him to get them as cheaply as possible.*  She did not promise to buy the property back, although she intended to do so if she could.  The promise was without consideration, and it was within the statute of frauds as to the sale of lands.  Pub. Sts. c. 78, § 1, cl. 4.  Browne, St. of Frauds, (5th ed.) §§ 94, 445 *a, ad fin.*  There was no semblance of agency in the purchase, although even when the mortgagee promises to buy for the mortgagor it is settled in this State that there is no constructive trust.  An agreement bad under the statute cannot be made effectual, either by way of contract or by way of trust, merely by being relied upon.  *Bourke* v. *Callanan*, 160 Mass. 195.

*Bill dismissed.*

---

* The premises were bid in by the bank, and the plaintiff, the original mortgagor, was permitted to live on them.  Later the bank sold the estate to Monroe, and the promise to sell back was made by him to the plaintiff before he received a deed from the bank.