WILLIAM E. CARTER & another *vs.* EXCHANGE TRUST COMPANY & another.

Suffolk.    January 14, 1915. — April 1, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Pledge. Mortgage. Equity Jurisdiction,* Equitable set-off, Adequate remedy at law. *Judgment.*

Where the nominal holder of the record title to certain real estate subject to a first mortgage for $7,500 and to a second mortgage for $5,000 which is held by the beneficial owner, at the request of the beneficial owner signs and delivers to a bank a note for $2,000 and the beneficial owner thereupon delivers to the bank his second mortgage as collateral security for that note, the bank, in the absence of a special agreement to that effect, is under no obligation to redeem and pay the first mortgage when it becomes due in order to protect the second mortgage which it holds as collateral.

After judgment has been entered for the plaintiff in an action upon a promissory note against the maker of the note, who is the nominal holder of the record title to certain land subject to a first and a second mortgage, the second mortgagee being the beneficial owner of the land who had delivered the second mortgage to the plaintiff as collateral security for the note of the defendant, the judgment debtor and the beneficial owner of the land, whose remedy at law is adequate, cannot maintain a suit in equity against the judgment creditor to have set off against the judgment a sum of money received by the judgment creditor from the first mortgagee as surplus proceeds from a foreclosure of the first mortgage by sale, even although before the entry of the judgment the amount of such surplus could not be ascertained and therefore could not be pleaded in the action upon the note.

CROSBY, J.    The plaintiffs in this suit in equity seek to enjoin the defendants from enforcing a judgment against them and to be allowed to set off certain claims against that judgment.

The plaintiff Harrison Loring, who was the owner of certain real estate, conveyed it to the other plaintiff, Carter, and took a second mortgage back from Carter to secure a note for $5,000.

The property was subject to a first mortgage for $7,500, held by the Wareham Savings Bank.

It is agreed that the real estate in fact belonged to Loring, and that Carter, who was a clerk in Loring's employ, was a mere nominal holder of the record title, he being called a "straw man."

The plaintiff Loring afterwards applied to the defendant trust company for a loan of $4,000, which was refused; but he finally was granted a loan of $2,000, and a note for that amount, signed by Carter and indorsed by Loring, was given to the trust company and the $5,000 note and mortgage, held by Loring, was transferred to the trust company as collateral security for the loan.

The case was referred to a master, who found that the treasurer of the Wareham Savings Bank saw Loring in regard to overdue interest upon its loan, and also with reference to unpaid taxes upon the real estate; that Loring referred him to the trust company and thereupon the treasurer saw one Tibbetts, the secretary of the trust company, and made a demand upon him for the overdue interest, which was refused; that shortly afterwards Tibbetts stated to the treasurer of the savings bank that his company would pay the interest and attorney's fees incurred in connection with the foreclosure proceedings, providing such proceedings were abandoned. The bank then demanded payment of the overdue interest and attorney's fees, and agreed to furnish the trust company later with the amount of these items.

The master found that Tibbetts agreed with the treasurer of the bank that the trust company would pay these charges as soon as he learned the amounts, and that the bank agreed to accept these amounts and to abandon any contemplated foreclosure proceedings. He also found that the bank, shortly after the agreement above referred to, began proceedings to foreclose its mortgage without furnishing to the trust company the amounts due, as previously had been agreed.

The master further found that there was no consideration for this agreement between the bank and the trust company, unless the facts as above stated constituted such consideration. He found that Loring first learned that the bank was to begin proceedings to foreclose its mortgage in the latter part of February, and immediately saw Tibbetts with reference to it.

The master states in his report that Loring testified that Tib-

betts said to him: "We will take care of the Trust Company's interest in the property." He further states that Loring also testified that he (Loring) understood this to mean that "the Exchange Trust Company would do whatever was necessary to prevent the foreclosure of the first mortgage;" that he relied upon this statement and took no steps to raise money to pay the Wareham Savings Bank the amount due.

The master found that there was no satisfactory proof of any agreement between Loring and the trust company, and that "it appears to have been a casual talk in which whatever was said was easily susceptible of misunderstanding between the parties." He found, however, that Loring understood from this conversation that the trust company would in some way prevent the foreclosure, and on account of such belief he (Loring) took no steps to prevent it.

The master further found that Tibbetts did not state nor intend to state to Loring that the trust company would pay the bank whatever might be necessary, including the principal, to prevent the foreclosure. He also found that it was extremely doubtful whether he (Loring) could have raised the money necessary to pay the Wareham Savings Bank what was due, including the principal of the mortgage, at any time before the foreclosure.

The findings of the master cannot be set aside or disregarded unless clearly wrong. He saw the parties and heard the evidence, which is not reported in full. We are of opinion that his findings must stand.

It is difficult to understand how Loring could have believed that the trust company would protect his interests by preventing the foreclosure of the first mortgage; all that Tibbetts, representing the trust company, said to him was: "We will take care of the Trust Company's interest in the property." This was far short of saying that they would protect his (Loring's) interests.

In view of the facts found by the master, it is apparent that Loring properly could not have relied upon the trust company to protect his interests, but should have prevented the foreclosure by his own efforts, although the master found that it was "extremely doubtful" whether he would have been able to raise the money at any time before the foreclosure.

Besides, the master has found that there was no consideration

for a promise, had any been made by Tibbetts, to protect Loring.

While, as the plaintiff contends, the pledgee of property is bound to use due care when he undertakes to realize upon the pledge, and is bound to exercise reasonable diligence in caring for such property, we are of opinion that that principle has no application to this case. If, as the master found, the $5,000 second mortgage was held by the trust company as collateral to secure the payment of the $2,000 loan, still the trust company was under no obligation to redeem and pay the first mortgage in order to protect the second mortgage held by it as collateral, in the absence of any agreement to that effect.

The case of _Jennings_ v. _Moore,_ 189 Mass. 197, cited by the plaintiffs, is not applicable to the case at bar. Upon the findings of the master there is nothing to show that the trust company ever promised to protect the plaintiff's interests, nor are there any findings from which a constructive trust can be found to exist. There is nothing to show that the officers of the trust company acted in bad faith or in fraud of the plaintiff's rights. _Bourke_ v. _Callanan,_ 160 Mass. 195. _Rose_ v. _Fall River Five Cents Savings Bank,_ 165 Mass. 273, 275. _Hall_ v. _First National Bank of Chelsea,_ 173 Mass. 16, 19.

The only other question presented by the appeal is whether the plaintiffs are entitled to have allowed in set-off and reduction of the judgment rendered upon the $2,000 note any sum received by the trust company from the Wareham Savings Bank as surplus proceeds of the foreclosure sale.

We are of opinion that after the action upon the $2,000 note (brought by the defendant Daly for the benefit of the trust company) had become merged in a judgment, such judgment cannot be attacked or reduced by any claim which the plaintiffs may have against the trust company arising from the payment to it of such surplus proceeds of the foreclosure. And this is true, notwithstanding the fact that the amount of such surplus, so received, not having been ascertained could not have been pleaded in set-off before the judgment was entered.

While equity, in order to avoid injustice, ordinarily will enforce, when necessary, a set-off of demands between the same parties, still that doctrine does not apply to a case like this, where its effect

would be to attack and impair a judgment regularly entered in another action.

The case of *Cromwell* v. *Parsons*, 219 Mass. 299, relied on by the plaintiff, is to be distinguished from the case at bar. In that case it was held that although there was at law no right of set-off, because the parties were different, in equity the plaintiff should have the right to set off his demand because the transaction was mutual between the same parties and grew out of the same transaction. It is to be noted that the question in that case involved the right to set off an execution held by the plaintiff against another execution held by the defendant, and was not a case where, as here, the plaintiff seeks to set off a demand against a judgment rendered in favor of the defendant Daly against these plaintiffs.

The plaintiffs have a complete and adequate remedy at law against the trust company to recover any sum that may have been received by it as surplus proceeds of the foreclosure sale.

The result is that the final decree * should be affirmed; and it is

*So ordered.*

*W. M. Noble*, for the plaintiffs.
*J. B. Dore*, for the defendants.

---

* After a hearing by *Jenney*, J., an interlocutory decree was entered confirming the master's report. After a further hearing by *Wait*, J., a final decree was entered dismissing the bill. The plaintiffs appealed.