DAVID GLADSTONE vs. TREASURER AND RECEIVER GENERAL.

Middlesex.    November 5, 1957. — February 19, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Newspaper. Notice. Mortgage,* Of real estate: foreclosure. *Evidence, Opinion. Words,* "Published."

An opinion in the form of a conclusion from subsidiary facts not supporting it has no evidentiary value. [51]

A conclusion that a newspaper having the name of a town as part of its name was in fact not published in the town but in a city was required where it appeared that, although the newspaper by its title page purported to be published and entered in the post office in the town and certain preliminary field work respecting news and advertising was done there, it had no real office there but only a telephone address at its proprietor's home and its real office and its place of printing were in the city. [51]

If no newspaper in fact is published in the town where mortgaged land is located, the mortgagee, in publishing a notice of a foreclosure sale under G. L. (Ter. Ed.) c. 244, § 14, is not required to use a newspaper which by its title page purports to be printed or published in that town and has a circulation there but may at his election use that newspaper or a newspaper published elsewhere in the same county. [52]

CONTRACT. Writ in the Superior Court dated March 31, 1953.

The action was tried before *Warner,* J.

*Alan M. Qua,* (*Francis M. Qua* with him,) for the plaintiff.

*Samuel W. Gaffer,* Assistant Attorney General, (*Jacob M. Levinson* with him,) for the defendant.

RONAN, J.   This is the plaintiff's exception to the direction of a verdict for the defendant in an action of contract brought under G. L. (Ter. Ed.) c. 185, §§ 101, 102, by the assignee of the owner of registered lands in Billerica to receive compensation from the assurance fund for loss of land or his interest therein due to the alleged error, omission,

or mistake of the assistant recorder or assistants of the Land Court in issuing two certificates of title to a purchaser at the foreclosure sales of mortgages upon said land. The main contention of the plaintiff is that the foreclosure proceedings were not in conformity with the statute in that the notice of the sale was published in the "Lowell Sun" when it should have been published in the "Billerica News."

General Laws (Ter. Ed.) c. 244, § 14, provides that a foreclosure under a power of sale shall be ineffectual unless notice has been published "in a newspaper, if any, published in the town where the land lies. If no newspaper is published in such town, notice may be published in a newspaper published in the county where the land lies, and this provision shall be implied in every power of sale mortgage in which it is not expressly set forth. A newspaper which by its title page purports to be printed or published in such town, city or county, and having a circulation therein, shall be sufficient for the purpose." See also G. L. (Ter. Ed.) c. 4, § 6, Eighth, and c. 236, § 28.

The place of publication of a newspaper is a question of fact to be decided by the judge or jury like any other issue involving domicil. See *Tuells* v. *Flint*, 283 Mass. 106, 109; *Russell* v. *Holland*, 309 Mass. 187, 191; *Levanosky* v. *Levanosky*, 311 Mass. 638, 642; *Rummel* v. *Peters*, 314 Mass. 504, 517; *Hopkins* v. *Commissioner of Corporations & Taxation*, 320 Mass. 168, 173. Since the trial judge directed a verdict for the defendant, the issue is whether the plaintiff introduced sufficient evidence to present an issue of fact for the consideration of the jury. *DeAngelis* v. *Boston Elevated Railway*, 304 Mass. 461, 463.

The only evidence presented on the question of publication was by two witnesses called by the plaintiff, whose testimony was uncontroverted. Copies of the "Billerica News" (hereinafter called the News) were also introduced in evidence. One of these witnesses was the general manager of the Lowell Sun who testified that both the Lowell Sun and the News are printed in Lowell, that the billing depart-

ments of both are in Lowell, and that the Lowell Sun had a daily circulation of 1,860 copies in Billerica.

The other witness, one Bocko, testified as follows: The News was a weekly with an average circulation of about 1,400 copies in Billerica. During the entire year of 1950 he was the sole owner, editor, and publisher of the News which was "published" in Billerica and which was entered as second class matter in the post office in North Billerica, a part of Billerica. Upon the title page appeared: "The Billerica News is published every Thursday at North Billerica, Massachusetts, entered as second class matter, April 19, 1928 at the Post Office at North Billerica, Massachusetts, under the Act of March 3d, 1879, by the Billerica Publishing Company, Stanley J. Bocko, managing editor, home address Mount Pleasant St., North Billerica, home telephone, Billerica 687, Lowell office Lowell 8–8812." The Billerica address was changed when he changed his residence. The only facility at his home to conduct a newspaper was a typewriter. The Billerica Publishing Company which prints and publishes the News has no address in Billerica and no property or room there but has its main office and printing plant in Lowell. Both are listed in Lowell in the telephone and city directories. The News is listed in the Billerica telephone book with his home address and under his name. The paper is printed in Lowell. The largest percentage of the news items is obtained in Billerica by about ten correspondents there. There is one advertising man working there. The witness's wife answers the telephone at his home all day. The other employees of the publishing company work in the printing plant in Lowell. There is no suggestion that the editorial office is not located there. Other printing is done in this plant.

What Bocko had in mind when he testified that the News was published in Billerica is clear from his testimony of the following incident. The Wilmington Crusader, owned by the Billerica Publishing Company (also the owner of the News), is distributed in Wilmington. It is printed in the same plant in Lowell as the News. The Crusader has no

office in Wilmington, although it appears from its masthead that it is published in Wilmington. The witness was of the opinion that it was published in Wilmington because of these words in the masthead. He was also of the opinion that the Lowell Sun could not be said to be published in Billerica because it had no second class post office permit issued from that town. His opinion was that the place named in a post office permit fixes the actual place of publication. However, that did not make "the home office of the paper" in Billerica. *Rose* v. *Fall River Five Cents Savings Bank*, 165 Mass. 273, 275.

The testimony of Bocko that the News was "published" in Billerica is merely his own opinion based on conjecture from undisputed subsidiary facts. Such a guess or conjecture in the form of a conclusion from basic facts that do not tend toward that conclusion has no evidential value. *Ruschetti's Case*, 299 Mass. 426, 431. *Brownhill* v. *Kivlin*, 317 Mass. 168. *Nass* v. *Duxbury*, 327 Mass. 396. *Ralph's Case*, 331 Mass. 86, 90. That conclusion is not in accord with *Rose* v. *Fall River Five Cents Savings Bank*, 165 Mass. 273, and *Brown* v. *Wentworth*, 181 Mass. 49. See *Blake* v. *Rogers*, 210 Mass. 588; *Ellis* v. *Lyford*, 270 Mass. 96.

In those cases the place of publication was said to be where the printing was done and where the paper had its home office. Here there was no evidence of any real office in Billerica. Rather all the evidence tended to show that the work done in Billerica was mere field work preparatory to the publication of the paper in Lowell. The only rational conclusion that could be inferred from the basic facts, therefore, was that the News was published in Lowell. *Thompson* v. *Boston Publishing Co.* 285 Mass. 344, 351.

One question in the affidavit used in the Land Court and required to be filed and registered with the assistant recorder in the Land Court (G. L. [Ter. Ed.] c. 185, § 70) and which accompanied each of the foreclosure deeds, which ran to Eva Cook, a straw of the mortgagee, was, "Is the notice printed in a paper published (if there be any) in the town or city where the land lies?" The answer was, "No —

Lowell Sun Lowell." That answer, either alone or in conjunction with the rest of the affidavit, does not tend to show there was a newspaper published in Billerica but the answer in its somewhat cryptic style rather implies that, there being no newspaper published in Billerica, the Lowell Sun was used to advertise the mortgage foreclosure sales.

Under G. L. (Ter. Ed.) c. 244, § 14, no foreclosure sale is to be held unless notice of the sale shall have been published once a week in each of three successive weeks in a newspaper published in the town where the land lies. But if there is in fact no such newspaper the mortgagee may have the notice published in a newspaper published in the county where the land lies or he may use a newspaper purporting by its title page to be printed or published in such town, or city or county and having a circulation therein. See also G. L. (Ter. Ed.) c. 4, § 6, Eighth. In such circumstances, the mortgagee has a choice of using a paper with such a title page or to employ a newspaper published in the county where the mortgaged land is located. The provision for employing a newspaper with a certain title page was inserted for the benefit of the mortgagee. Here the choice of the News was not compulsory and publication in the Lowell Sun was sufficient. *Brown* v. *Learmouth,* 228 Mass. 417, 420.

Since it was not possible for the jury to conclude that as matter of fact the News was actually published in Billerica, it follows that publication of notice in the Lowell Sun was proper under G. L. (Ter. Ed.) c. 244, § 14, and that there was no irregularity in the foreclosure proceeding. Therefore, no case was presented under G. L. (Ter. Ed.) c. 185, § 101, and a directed verdict for the defendant was proper.

In view of what has been said it is not necessary to decide whether the plaintiff would be barred by G. L. (Ter. Ed.) c. 185, § 107, which provides that the "assurance fund shall not be liable for any loss, damage or deprivation occasioned . . . by the improper exercise of any power of sale in a mortgage . . . ."

*Exceptions overruled.*