MARY ELIZABETH LAUBLE'S CASE.

Suffolk. October 6, 1960. — December 6, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Workmen's Compensation Act,* Specific compensation, Medical services.

In a workmen's compensation case involving an employee who sustained burns over much of her body in an accident which caused her death eight weeks later, where the Industrial Accident Board under G. L. c. 152, § 36A, awarded the claimants specific compensation under § 36 (h) for the employee's disfigurement and under § 36 (q) for her functional loss of use of both legs, a contention by the insurer that such awards could not be made unless it was "admitted or conclusively proven" that the disfigurement and loss of use would have resulted if the employee had lived was not well founded: the board was entitled to base its award on medical testimony of the probabilities of disfigurement and loss of use. [522–523]

In a workmen's compensation case involving an employee who sustained extensive first, second and third degree burns in an accident which caused her death eight weeks later, an award by the Industrial Accident

Board under G. L. c. 152, § 36 (q) of specific compensation in the maximum amount for the employee's loss of use of both legs was warranted by medical evidence, including testimony of her attending physician that, even if skin grafting operations had been successful, the employee "would have been permanent invalid and probably would have suffered from about complete disability," and her loss of motion would have "approach[ed] total disability"; and an award under § 36 (h) of specific compensation in the maximum amount for her disfigurement was warranted by testimony as to the areas of scar tissue and removal of parts of both breasts.   [523–525]

Findings by the Industrial Accident Board in a workmen's compensation proceeding involving an employee who sustained severe burns over much of her body in an accident which caused her immediate hospitalization and death eight weeks later, that "this was an emergency case and . . . the condition of the patient was such as to require the special treatment provided" by her attending physician and five other physicians called in by him, physicians not provided by the insurer, and that the bills submitted by them were "proper and reasonable," warranted the board's approval of payment of the physicians' bills by the insurer under G. L. c. 152, § 30, even though five of the physicians were on the hospital staff and the respective amounts of their bills were not at industrial rates.   [525–526]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Taveira, J.*

*Charles F. Choate,* (*Francis X. Ryan* with him,) for the insurer.

*Frank T. Wojcik,* for the claimants.

WHITTEMORE, J.   The reviewing board affirmed and adopted the findings and decision of the single member, except for one paragraph rightly struck by the board.   *Filosa's Case,* 295 Mass. 592, 595–596.   The single member found that the employee on March 29, 1958, had sustained first, second and third degree burns over much of her body; that she lived more or less in a state of shock until her death on May 25, 1958; and that her death was causally related to the accident.   The award of the reviewing board to the employee's brother and sister, as claimants, was embodied in the decree of the Superior Court.   The insurer contests the award of specific compensation totaling $6,500: $2,500 under c. 152, § 36 (h), for disfigurement, and $4,000 under sub-

section (q) for functional loss of use of both legs, $2,000 for each. The insurer also contests the approval of the bills of six physicians.

*Henderson's Case,* 333 Mass. 491, 495, established that G. L. c. 152, § 36A, gives to dependents the rights to specific compensation under § 36 to which a deceased employee had become entitled at the time of "the happening of the event upon which the employee bases his claim." The insurer contends that the reference is to "that point in time when the medical end result of the employee's injuries can be determined" with such certainty that the end result is "admitted or conclusively proven." We disagree.

There is no basis for a special rule of evidence in the proof of the relevant medical fact. The question is essentially the same as that which the board resolves for living claimants under § 36 and other sections of the act, by finding as a fact for present award the future state of health and bodily function of living claimants. *Paltsios's Case,* 329 Mass. 526, 529. *Royal's Case,* 286 Mass. 374, 376–377. This is a rule of evidence of general application. *Menard* v. *Collins,* 298 Mass. 40. *Rezendes* v. *Prudential Ins. Co.* 285 Mass. 505, 513. Compare *Pullen* v. *Boston Elev. Ry.* 208 Mass. 356. The board makes these determinations notwithstanding conflicting medical testimony and, under the familiar rule, it may make the finding on testimony of probabilities but not on conjecture or speculation. *DeFilippo's Case,* 284 Mass. 531, 534–535. *Brownhill* v. *Kivlin,* 317 Mass. 168, 170. Under § 36 (q) the board must find, as to a living claimant, whether the present state of his legs or arms is such that there is permanent total, or partial, loss of use; that is, what on the medical testimony the board concludes he will be able to do with these members in the future. Under § 36 (e) there is a similar determination for partial loss of vision. Similar issues are resolved under §§ 34 (total incapacity), 34A (permanent and total incapacity), and 35 (partial incapacity). See *Hunnewell's Case,* 220 Mass, 351, 355–356; *Barry's Case,* 235 Mass. 408; *Ramondetta's Case,* 240 Mass. 492, 495; *Frennier's Case,* 318

Mass. 635, 637–640; *Amello's Case*, 320 Mass. 347, 348; *Gramolini's Case*, 328 Mass. 86, 88–89.

It is no bar to a finding of the fact in such cases that there is a possibility that the claimant's condition will improve, *Paltsios's Case*, 329 Mass. 526, 528, *Khachadoorian's Case*, 329 Mass. 625, 631, *Gramolini's Case*, 328 Mass. 86, or that a risky operation may improve it. *Snooks's Case*, 264 Mass. 92. *Sheppard's Case*, 287 Mass. 459, 463. The death of the employee is no basis for a different rule of evidence. In either case the fact as determined by the board is conclusive for any payment then finally made. *Paltsios's Case*, 329 Mass. 526, 529 (lump sum settlement of probable future disability is final). Compare G. L. c. 152, § 12.

There was sufficient evidence to permit the finding and award. The attending physician testified to severe burns over approximately twenty-five per cent of the body, the principal area of the burns being the lower extremities, chiefly the thighs "involving . . . completely buttocks on both sides and up into the perineum"; some third degree burns on the right hand and arm and scattered third degree burns on the chest, abdomen, flanks, and back of the knees; and second and first degree burns of lesser importance on the left hand and about the face. The skin grafting which was attempted resulted in "only partial take." The hospital records showed nine debridements and a "bilateral partial mastectomy." The physicians were attempting "to catch up with something that seemed to be getting ahead of them." They kept going deeper in the burned flesh in an effort to reach satisfactory tissue for grafting. While she was in the hospital the patient's legs were bandaged. On occasion the physicians would test motion, passively, and there was a certain amount of stiffness and limitation of motion; they were not concerned that she should try to move the legs herself. The two major joints of the legs were involved, hip and knee, and if grafting had been successful there would have been second class skin and some motion; she would not have had "completely ankylosed joint." "As far as legs concerned she never reached medi-

cal end result." The physician's opinion was based on the probabilities which he would expect on the basis of his own experience. It would be impossible for him to give an opinion as to what the functioning would be, if the grafting was successful. The principal treatment was in the posterior area; the grafts on right or left thigh or buttocks took only to a degree; the physician did not think "they reached fifty per cent take on either occasion." He had no way of knowing whether the skin grafting would have been successful. Had it been successful, the physician "feels" that the employee "would have been permanent invalid and probably would have suffered from about complete disability." The loss of motion "would have been considerable and in my opinion approach total disability." "Q. Isn't that speculative, doctor? A. It is speculation based on my experience with these people and knowing patient as I did."

The evidence supported the finding that the employee had sustained complete loss of use of her legs. It was assumed in the insurer's cross-examination of the physician that, if the grafts did not take, the employee could not make effective use of them. The fact of some motion in the legs would not be significant if large areas of burned flesh were unhealed. The speculation was not in respect of this, but whether operations which were being tried and which had not been successful prior to death would have been successful and if so whether the legs could have been used. It is the insurer who seeks the advantage of speculation, not the claimants. In any event the physician's testimony as to the probability even if the grafts were successful was sufficient to warrant the conclusion. *Caccamo's Case,* 316 Mass. 358, 359. *DeFilippo's Case,* 284 Mass. 531, 534–535. *Josi's Case,* 324 Mass. 415, 419. *Paltsios's Case,* 329 Mass. 526, 529. Compare *Hachadourian's Case,* 340 Mass. 81.

The evidence supported the finding of disfigurement. It was not necessary that the physician testify expressly that what had happened to the employee was disfigurement. At best there would be substantial areas of scar tissue. Parts

of both breasts had been removed.   The evidence permitted
the maximum awards.   *Morley's Case,* 328 Mass. 148, 150–
151.   The statute specifies for disfigurement "proper and
equitable compensation, not to exceed one hundred and
twenty-five weeks."

The report of the single member states, "Issues: Section
36 (36A) — Loss of function and disfigurement.   Sections
13 and 30 — Doctors' bills.   Agreed: . . . Counsel for the
insurer stated . . . they are . . . willing to pay the hospi-
tal bill, at industrial rates.   Under sections 13 and 30 the
insurer wants determination as to whether the bills of the
physicians are reasonable, and whether or not these are
staff physicians of the hospital, or treated her as a private
patient."   The issue for the separate hearing on the hospi-
tal bills was restated at that hearing in substantially the
same terms.   The board had before it the evidence as re-
ported by the single member on the issue of the award, and
the bills of the six doctors.   The board decided that "It is
the opinion of the board that this was an emergency case
and that the condition of the patient was such as to require
the special treatment provided.   The board therefore finds
that the foregoing bills are proper and reasonable . . .
[with the exception of one bill which was reduced]."

Included in the record was the testimony of Dr. Wall, the
attending physician, that "somebody called . . . [him] to
come up and see Mrs. Lauble at the Lynn Hospital accident
room: on March 29 he was on service at the hospital."
"Q.   And it was in that capacity that you came to see . . .
[her]?   A.   No, not completely."   The patient was not
then in shock and was conscious and rational.   It is reason-
ably to be inferred that Dr. Wall continued as the attending
physician without express engagement, and, as the case re-
quired, called in other physicians.

We think the board in effect made a finding that payment
to the physicians was warranted under the provision of
G. L. c. 152, § 30, which provides that "where in case of
emergency or for other justifiable cause a physician other
than the one provided by the insurer is called in to treat the

injured employee, the reasonable cost of the physician's services shall be paid by the insurer, subject to the approval of the division." The finding that "the condition of the patient was such as to require the special treatment," read with the finding that "this was an emergency case," satisfies the statutory requirement of "other justifiable cause." That the employee at the start of her hospitalization was fully rational, as the physician testified and the records show — that she could talk and think — did not mean that she was in a state to take action under the statute. She was severely injured and close to shock which was feared but averted by medication. The deteriorating state of the patient permitted the finding, implicit in the board's brief statement, that the attending physician called the other physicians "for other justifiable cause." The testimony that all but one of these physicians were on the staff of the hospital did not require the conclusion that their bills should be at industrial rates or their charges included in the hospital charges. The approval of the bills in view of the statement of the issue in respect thereof implies the finding that the services rendered were substantially more than those to be expected without charge from staff physicians at the hospital. Compare *Allen's Case,* 265 Mass. 490. The requirement of the statute for a finding that the "services were adequate and reasonable and the charges reasonable" was sufficiently met by the board's finding that the bills "are proper and reasonable."

More specific findings would have been appropriate and helpful, but the deficiencies are not such as to require recommittal as recently ordered in *Herson's Case, ante,* 402, 407, and *Garrigan's Case, ante,* 413, 419–420.

The decree is affirmed. Costs of the appeal are to be determined by the single justice.

*So ordered.*