Jacob H. **GICHNER** et al., Appellants,

v.

**ANTONIO TROIANO TILE & MARBLE CO., Inc.,** et al., Appellees.

No. 21782.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 23, 1968.

Decided Feb. 10, 1969.

---

Mr. Frank F. Flegal, Washington, D. C., with whom Mr. Sidney Dickstein, Washington, D. C., was on the brief, for appellants.

Mr. Thomas M. O'Malley, Washington, D. C., for appellee Antonio Troiano Tile & Marble Co., Inc.

Before DANAHER,* WRIGHT and TAMM, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

Appellants, plaintiffs below, owned a warehouse, part of which they leased to the corporate appellee, Antonio Troiano Tile & Marble Co., Inc. Troiano had several employees, including Whitaker, the warehouse manager, who had a key to the warehouse. Whitaker, three other Troiano employees, and a girl entered the warehouse at about 3:00 the morning of August 11, 1963, after a drinking spree; they left within an hour. One of the employees, Faulds, drove off with the girl, travelled one block, ran out of gas, and fell asleep in the car. They were awakened by police and arrested for drunkenness at about 6:00 A.M. Meanwhile, at 5:35 A.M. the Fire Department received a call that the warehouse was burning. It was burned extensively before the fire could be controlled. Gichner claimed a loss of $56,000, of which $20,000 was covered by insurance.

Gichner and the insurance company sued Troiano and Whitaker.[1] They alleged that the fire was started by negligent smoking on the part of Whitaker and the others in the warehouse that night. Troiano's liability was predicated on three grounds. The first two were based on negligence: (1) in giving a key to Whitaker, and (2) in allowing smoking on the premises and failing to take steps to prevent fires even though flammable material was stored there. The third ground was based on breach of contract, in that Troiano's lease stated that Troiano "will repair or replace any other damage caused to the demised premises by [Troiano's] negligence *or the negligence of his servants or employees* * * *." (Emphasis added.)

At trial Gichner presented a District of Columbia Fire Department investiga-tor who concluded, after eliminating all other possible causes of the fire (such as faulty electricity, heating, etc.), that it was caused by careless smoking; he reached his conclusion even though no direct evidence of smoking (such as cigarette butts) was present. Gichner also introduced four depositions. The first was Whitaker's, in which he stated that he and the other employees had been out drinking that night, had picked up the girl, found that she had a skinned knee, taken her to the warehouse where they bandaged the knee, and then left. He stated that he did not think anybody had been smoking. A second deposition, by employee Faulds, corroborated Whitaker's story. Faulds stated he did not know if the people had been smoking in the warehouse that night.

The third deposition was that of an employee of a neighboring warehouse who stated that he had seen Troiano employees drinking and smoking near the warehouse premises in the past. In the fourth deposition Benito Troiano, head of Troiano, stated that he knew his employees smoked on the job, and that he had not stopped them. Further, he stated that there were no fire extinguishers kept on the premises, and that mastic (a material which the fire investigator testified was flammable) was stored there in cans. Gichner attempted to introduce a statement given by Faulds to the fire inspector later in the morning of the fire, in which he admitted that the group had been smoking in the warehouse that night. The trial judge ruled it out as hearsay.[2]

At the close of plaintiffs' case Judge Holtzoff, sitting without a jury, granted judgment for the defendants. He ruled that, although the fire investigator's conclusions were good enough for Fire Department purposes, the evidence was not sufficient to "justify the Court in

---

* Circuit Judge Danaher became Senior Circuit Judge on January 23, 1969.

1. They attempted to sue Faulds and the two other employees but could not obtain service. On this appeal, the court has been notified that Whitaker's lawyer has died, and that appellants have not been able to locate Whitaker at his home or job to serve appellate briefs on him.

2. It was later admitted, but for impeachment purposes only.

inferring that by a fair preponderance of the evidence it has been established that careless smoking was the cause of the fire * * *." This was so even though the investigator had eliminated "every other imaginable cause" in reaching his conclusion. Judge Holtzoff stated that there was no direct testimony that the group had been smoking at all, and that he could not infer that they had been smoking from the mere fact that the men were smokers. The judge thus found that there was no proof that negligence on the part of the employees started the fire. Because of this finding, he did not rule on the theory of liability of Troiano for its employees, specifically stating that he did not need to reach that point.

On appeal Gichner raises two points: (1) the trial judge should have considered the statement by Faulds, and (2) the testimony of the fire investigator, with or without Faulds' statement, was sufficient to make out a case of negligent smoking as the cause of the fire. Troiano, in addition to contesting these arguments, claims that in any case Troiano cannot be held liable for the negligent acts of its employees committed outside the scope of their employment.

I

Faulds admittedly was in his employer's warehouse the morning of the fire, leaving at about 3:45 A.M. He fell asleep in his car near the warehouse, was awakened by police a couple of hours later, and was arrested for drunkenness. As he was taken to police headquarters he saw smoke coming from the warehouse. (In his deposition he admitted that "when the police woke us up it was burning up.") At police headquarters he was questioned by police and by the fire investigator. In his statement taken there at 9:40 the same morning he described having been out drinking and going into the warehouse. He stated:

"* * * I guess we got there about 3:00 AM and John [Whitaker] had a key so we went in the back door

and sat around talking and smoking inside the front door. I think we left about somewhere around 3:45 AM * * *. * * *"

In his deposition taken January 21, 1966, some two and a half years after the fire, Faulds stated that he did not know if the people had been smoking the night of the fire. He was asked if he had made a statement to the fire investigator and he replied affirmatively, but the matter apparently was not pursued. At trial the court asked plaintiffs' attorney whether Faulds had been "confronted with the statement [to the fire investigator] at the deposition." The attorney replied, "No, Your Honor; it was not available to counsel, it was in the Fire Department's files."

Faulds did not testify at the trial, and Gichner offered his statement into evidence. The statement was obviously hearsay, and the question before us is whether it can be admitted under an exception to the hearsay rule as a declaration against interest. Such a declaration is one of a series of traditional exceptions to the hearsay rule, see C. McCormick, Evidence Ch. 28 (1954), well recognized in this jurisdiction. Wabisky v. D. C. Transit System, Inc., 114 U.S.App.D.C. 22, 309 F.2d 317 (1962); Pennsylvania R. Co. v. Rochinski, 81 U.S.App.D.C. 320, 158 F.2d 325 (1946); Martin v. Savage Truck Line, Inc., D.D.C., 121 F. Supp. 417 (1954).

The requirements for a statement coming within this exception were clearly stated in Johnson v. Sleizer, 268 Minn. 421, 129 N.W.2d 761, 763 (1946). The court noted that such declarations are admissible when they

"concern a matter of which the declarant was personally cognizant, were against his pecuniary and proprietary interest, and were made with no probable motive to falsify."

The Johnson court went on to detail a fourth requirement—that the declarant be unavailable to testify at trial. The court noted that originally the exception was limited to instances where the de-

clarant was dead. However, since the rationale behind the exception is that the statements are intrinsically reliable and that there is a need for them, the court reasoned that they should be admitted when the declarant is unable to testify at trial for other reasons:

> "So far as the record shows, Meyer [the declarant] was not deceased at the time of the trial. It is clear, however, that he was both absent and unavailable. The record shows that diligent efforts were made to find him and it is quite apparent that he was not within the jurisdiction of the court. * * *
>
> * * * * * *
>
> Clearly, the necessity for resorting to hearsay is just as great when the declarant is outside the jurisdiction or cannot be found after a diligent search as when he is dead. * * * "

*Ibid. See also* Deike v. Great Atlantic & Pacific Tea Co., 3 Ariz.App. 430, 432, 415 P.2d 145, 147 (1966); Neely v. Kansas City Public Service Co., 241 Mo.App. 1244, 252 S.W.2d 88, 91 (1952).

In examining Faulds' statement it is apparent that two of the criteria for admissibility are easily met: the subject matter was one with which Faulds was "personally cognizant," and no conceivable "motive to falsify" is evident. We find that the third requirement is also met: Faulds' statement to the fire investigator was against his interest within the meaning of the exception.

■■ A statement is against pecuniary and proprietary interest when it threatens the loss of employment, or reduces the chances for future employment, or entails possible civil liability. C. McCORMICK, *supra*, § 254, pp. 548–549; *compare* Koninklijke Luchtvaart Maatschappij N. V. KLM Etc. v. Tuller, 110 U.S.App.D.C. 282, 291, 292 F.2d 775, 784, *cert. denied,* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); Wabisky v.

D. C. Transit System, Inc., *supra.* Here Faulds' statement is an important link in providing a basis for concluding that Faulds and the other nighttime visitors to the warehouse were responsible for starting the fire; the possibility of civil liability against him arising from the statement is thus evident. Indeed, an effort was made to make him a defendant in this case. *See* Note 1, *supra.* Further, even though Troiano did not have a rule against smoking on the premises, Fauld's admission that he had been there after hours, for a purpose unrelated to his employment, and while there did something which may have caused the destruction of his employer's stock in trade, reflects on his responsibility and trustworthiness, and can reasonably be said to jeopardize his standing with his employer.

Faulds was questioned by the fire investigator the morning of the fire. By his own testimony he knew that the warehouse was burning when he was taken for questioning. His admission that he was smoking in the warehouse a few hours before the fire started can hardly be viewed as an innocent remark irrelevant to the fire investigator's concern over the cause of the fire. Further, the reliability of such a statement, made immediately after the events, seems greater than that of a deposition taken two and a half years later. *Cf.* C. McCORMICK, *supra,* § 244, p. 519.

■ Troiano argues that, while an admission of a negligent act might come within the "possible civil liability" exception, Faulds only stated that they had been smoking, not that they had been carelessly smoking. But it is not necessary for the statement to include every aspect of negligence; it is enough if the statement could reasonably provide an important link in a chain of evidence which is a basis for civil liability.[3] Here the relevance of smoking to making out a

---

3. *Compare* Koninklijke Luchtvaart Maatschappij N. V. KLM Etc. v. Tuller, 110 U.S.App.D.C. 282, 290, 292 F.2d 775, 783, *cert. denied,* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961), where the statement in question was that of a plane's radio operator admitting that he had fail-

basis for liability is plain, for Judge Holtzoff's opinion was based in part on the lack of evidence of smoking at all. In the circumstances of this case, the admission by Faulds that he had been smoking shortly before the fire does not seem so remote or tenuous that it was unlikely to entail his possible civil liability.

Turning to the fourth and last requirement for admissibility of a declaration against interest—that the witness be unavailable at the trial—there is insufficient evidence in the record for this court to make a finding in that regard. It is conceded that Faulds was not present at the trial, and a statement in Gichner's brief indicates that he was not in the jurisdiction when Gichner attempted to serve process on him. However, it may be that through diligent search he could have been located and possibly brought to testify at trial. Therefore, the case is remanded to the trial court to determine whether Faulds was unavailable to testify at the trial.

A further point on the unavailability requirement bears comment. Troiano argues that Faulds should be found "available" at trial since he was available for deposition and was actually deposed by Gichner prior to trial at a time when Gichner knew of the state-

ment and could have confronted Faulds with it. While we accept the unavailability requirement, the need therefor has been seriously questioned,[4] and we decline Troiano's invitation to extend it to preclude the introduction of reliable evidence at trial simply because the witness was available prior to trial; we decline especially here where there is an indication, from the colloquy between court and counsel at trial, that, while plaintiffs knew of Faulds' statement at the time of taking his deposition, they did not confront Faulds with it because it was unavailable, being kept in the files of the Fire Department.

Accordingly, the case is remanded for a determination whether Faulds was unavailable to testify at trial. If it is found that Faulds was unavailable, then his statement should be admitted as a declaration against interest.[5]

## II

The trial judge ruled that there was no evidence of smoking, and that the testimony of the fire investigator, in which by a process of elimination he concluded that careless smoking caused the fire, was not sufficient to make out a case against the defendants. The judge did not indicate disbelief of the particulars of the fire investigator's testimony—his

---

ed to give an emergency message. While this may or may not have been sufficient in itself as a basis for liability, it was held admissible against his employer as an "important piece of substantive evidence on the issue of wilful misconduct."

4. Such statements are admitted because they are reliable. Therefore:

   "There is strong argument for dispensing with any requirement that the declarant be unavailable as a witness as a prerequisite for receiving his declarations under this exception to the hearsay rule. The reasoning which admits the admissions of a party and spontaneous declarations (such as excited utterances or declarations of present mental or bodily state), without regard to the availability of the party or the declarant—namely that the admission, or the spontaneous declaration, is just as credible as his present testimony would be—seems equally ap-

plicable to the declaration against interest. * * *"
   C. McCORMICK, EVIDENCE § 257, p. 554 (1954). (Footnotes omitted.)
   The Uniform Rules of Evidence, approved in 1953 by the National Conference of Commissioners on Uniform State Laws and the American Bar Association, have dropped the unavailability requirement. Rule 63(10), 9A UNIFORM LAWS ANN. 637 (1965), reprinted with comments in 4 B. W. JONES, EVIDENCE 1947 (5th ed. 1958). Similarly, Rule 509, AMERICAN LAW INSTITUTE, MODEL CODE OF EVIDENCE 255 (1942), has abandoned the requirement. See also Note, 52 CORN. L. Q. 301 (1967).

5. The last sentence of the statement contains an opinion as to the cause of the fire which, appellants admit, cannot be considered. They ask that the statement be admitted with the last sentence excised. We agree.

ruling appears to be more on the issue of the sufficiency of circumstantial evidence of this type. We think that the judge did not give this type of evidence sufficient credit. We explain below why, in a case of this type, such evidence is reliable and important.

In Part I of this opinion we ordered a remand to determine whether Faulds was unavailable, and thus whether his statement was admissible. We hold that if Faulds' statement is admitted, and if the trial judge believes it, then that statement plus the testimony of the fire investigator, coupled with the other evidence we have summarized, make out a case of negligence sufficient to put the defendant to proof. However, if Faulds' statement is not admissible, or is admitted and not believed, we do not decide whether the fire investigator's testimony alone makes out a sufficient case of negligence to put the defendant to proof. We leave that determination, should the need for it arise, to the trial judge, to be made in light of the general principles set out in this part of the opinion.

The fire investigator, a lieutenant employed by the Fire Department for 26 years, was accepted by the trial court as an expert on determining the causes of fire. He testified that within an hour of the first alarm he entered the Gichner warehouse and began an investigation of the fire's cause. He stated that by examining the char patterns on the rafter beams he pinpointed the origin of the fire to the Troiano part of the warehouse. Further, the origin point was just inside the door of the Troiano part. (It is noted that this is the spot where Faulds' statement indicates the group was smoking.) The heart of his testimony as to the cause of the fire was as follows:

THE WITNESS: * * * [T]he fire was caused by careless smoking on the premises at the address in question.

BY MR. DICKSTEIN:

Q Which portion of those premises, if you know?

A The Troiano property.

THE COURT: Lieutenant, what do you mean by careless smoking?

THE WITNESS: The reverse of normal smoking, sir, where the average individual would have, for his cigarette, pipe or cigar, an ash tray in which to place it when he does not have it in his hand or in his mouth. In the absence of this, persons might lay a cigarette, say on the bench or attempt to snuff it out on the floor, rather than in an ash tray, in careless smoking not exercising proper care and caution so as to possibly endanger the surroundings.

THE COURT: On what do you base that opinion?

THE WITNESS: The opinion as to this particular fire?

THE COURT: Yes.

THE WITNESS: Sir, on examining the contents of the building and the properties therein, we found no electric circuits in the immediate area of the heavy burning, of the spot that we felt was the seat of the fire. There were no materials that would have caused a spark or an arc at that point. There was no furnace or heater or element that would have caused sufficient heat to have ignited this material.

Therefore, we felt that this was an act of someone who had been in the premises, either intentionally, deliberately, or through break through, or with all due course.

THE COURT: Did you find any fresh cigarette butts?

THE WITNESS: No, sir; because of the extent of the fire all, what we would say, supporting evidence was burned and consumed in the fire.

THE COURT: So that your opinion that this was caused by careless smoking is reached by eliminating other possible causes?

THE WITNESS: That is correct, sir.

The fire investigator further testified that he found flammable material—

wrapping or packing material made of both wood and pasteboard—in the Troiano part of the warehouse. He also found cans that had had their contents burned out. There was no testimony which tended to show that someone had broken into the premises; rather, the only testimony that might have been relevant to this point was that the warehouse was locked when the group entered at about 3:00 that morning.

■ The weight of authority is that the causes of a fire are proper matter for expert opinion. Annot., *Cause of Fire—Opinion Evidence*, 88 A.L.R.2d 230, § 5 (1963). Such testimony has been admitted in federal courts, *see, e. g.*, Central Railroad Co. v. Jules S. Sottnek Co., 2 Cir., 258 F.2d 85 (1958), *cert. denied*, 359 U.S. 913, 79 S.Ct. 588, 3 L.Ed.2d 574 (1959), and Troiano does not seriously challenge its relevance. Rather, Troiano challenges such testimony when the expert's conclusion is arrived at circumstantially through a process of elimination.

Each side here relies primarily on a state case. Troiano cites Brownhill v. Kivlin, 317 Mass. 168, 57 N.E.2d 539 (1944).[6] There the defendant's intestate was seen sitting in the back seat of his car in the garage, alone, smoking, at 1:00 A.M. Two hours later the garage was in flames, the car being burned along with its occupant. The plaintiffs introduced the testimony of the district fire chief, a man "of unquestioned expert qualifications," 57 N.E.2d at 540, who stated that he was positive the fire started in the rear of the car and who concluded that it was caused by careless smoking. He did not find any direct evidence to that effect, because of the almost total destruction caused by the fire. When asked if he could "state definitely what started that particular fire?" he replied, "No, you could not, no." *Ibid.* The court held:

"The entry of the verdict for the defendant was right. The so called opinion of the district fire chief that careless smoking was the cause of the fire is revealed by the cross-examination to have been no real opinion at all * * *. Being merely a guess or speculation as to a fact later testified by him to be incapable of proof, this expression of conjecture must be put out of the case. * * * "

*Ibid.*

Appellants rely on a California opinion by Judge Traynor, George v. Bekins Van & Storage Co., 33 Cal.2d 834, 835, 205 P.2d 1037 (1949).[7] There a fire was discovered in defendant's warehouse. An expert testified that the fire was

---

6. Troiano also places emphasis on St. Lewis v. Firestone, D.C.Mun.App., 130 A. 2d 317 (1957), for the proposition that expert testimony like that in this case has an inadequate foundation for the conclusion as to the fire's cause. However, in that case the expert admitted that the fire could have had causes other than the one he speculated was the cause. Further, the court ruled that the testimony there was not appropriate for an expert since "anyone of ordinary training and intelligence would be equally capable of an opinion." 130 A.2d at 319.

7. Appellants also cite a case which indicates that the Supreme Court has felt that circumstantial evidence such as offered here is admissible if based on an adequate foundation. In Texas & Pacific Ry. Co. v. Watson, 190 U.S. 287, 289–290, 23 S.Ct. 681, 682, 47 L.Ed. 1057 (1903), the Court was presented with an assignment of error in which

"it was contended that the appellate court erred in holding that the trial court properly admitted testimony to the effect that certain witnesses did not know of and saw no opportunity for the cotton to have caught fire except from the locomotive in question. * * * "

The Court stated:

" * * * Evidence of the surrounding circumstances and conditions which by a process of exclusion would have tended to establish that the burning of the cotton could not have been caused other than by the locomotive in question would, we think, have been clearly relevant. As the record stands we think the assignment in question was without merit."

caused by careless smoking. Such testimony was admitted and credited by the court, the court noting:

"* * * In this case the experts set forth in detail the facts and reasons on which they based their opinions. Their conclusion that the fire was caused by careless smoking was reached by a process of elimination of other possible causes. * * *" 8

We note that the cases citing Brownhill v. Kivlin adopt a test for expert opinion testimony which discredits such testimony where the expert cannot speak in terms of probability; where, in other words, his opinion is merely a guess based on possibilities.9 Thus Brownhill has been cited 14 times on this point,

most of the cases involving the sufficiency of medical or other expert testimony in tracing the cause of an illness or injury (none involved the same type of factual situation as arose in Brownhill or here).10

The cases cite Brownhill for one of four related formulations: (1) expert opinion evidence is discredited where it is "a guess or conjecture in the form of a conclusion from basic facts that do not tend toward that conclusion [and] has no evidential value" 11; (2) expert opinion evidence is discredited where it is "not much more than a guess" 12; (3) expert opinion evidence is discredited where it is based on "no more than possibilities" 13; and (4) expert opinion evi-

8. 205 P.2d at 1044. The court also noted that "[a]fter the fire some cigarette butts were found in the toilet on the second floor, but firemen had been smoking on that floor during the fire." Id. at 1041.

In one major respect George is not directly on point. There the court held that, since defendant was a bailee subject to the uniform Warehouse Receipts Act, that act placed the burden on him to show that the fire was not caused by negligence. Thus the issue was whether the evidence precluded

"a finding that it was at least as probable that the fire was caused by negligence on the part of defendant or its employees as by a cause for which defendant would not be legally responsible."

Ibid.

Here, of course, the burden is on the plaintiff to show by a preponderance of the evidence that the fire was caused by negligent smoking. In their brief appellants seem not to have recognized this difference, and Troiano failed to mention it in rebutting appellants' arguments. We consider George only as support for the use of evidence arrived at by way of exclusion. It is for the reasons developed in text that we hold that such testimony, plus other direct evidence of smoking, is sufficient for plaintiff to have met his burden and to put the defendant to proof.

9. This is a distinction which appears generally in the law of torts. See 7 J. WIGMORE, EVIDENCE § 1976 (3d ed. 1940); 2 F. HARPER & F. JAMES, THE LAW OF TORTS § 20.2, pp. 1117–1118 (1956).

10. The cases, all from the Supreme Judicial Court of Massachusetts, are: In re Oberlander's Case, 348 Mass. 1, 200 N.E. 2d 268 (1962); In re Lauble's Case, 341 Mass. 520, 170 N.E.2d 720 (1960); Ramacorti v. Boston Redevelopment Authority, 341 Mass. 377, 170 N.E.2d 323 (1960); In re Sevigny's Case, 337 Mass. 747, 151 N.E.2d 258 (1958); In re Cormier's Case, 337 Mass. 714, 151 N.E.2d 269 (1958); Gladstone v. Treasurer and Receiver General, 337 Mass. 48, 147 N.E.2d 786 (1958); Pansky v. Abrams, 333 Mass. 427, 131 N.E.2d 183 (1956); Ralph's Case, 331 Mass. 86, 117 N.E.2d 142 (1954); Nass v. Town of Duxbury, 327 Mass. 396, 99 N.E.2d 54 (1951); Maniscalco v. Director of Division of Employment Security, 327 Mass. 211, 97 N.E.2d 639 (1951); Felch v. D'Amico, 326 Mass. 196, 93 N.E.2d 406 (1950); Friese v. Boston Consol. Gas Co., 324 Mass. 623, 88 N.E.2d 1 (1949); Carter v. Yardley & Co., 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559 (1946); and Premium Cut Beef Co. v. Karp, 318 Mass. 229, 61 N.E. 2d 112 (1945).

11. Gladstone, supra Note 10, 147 N.E.2d at 788; see also Cormier, supra Note 10, 151 N.E.2d at 271; Nass, supra Note 10, 99 N.E.2d at 57.

12. Pansky, supra Note 10, 131 N.E.2d at 184; see also Ralph, supra Note 10, 117 N.E.2d at 144; Maniscalco, supra Note 10, 97 N.E.2d at 642; Premium, supra Note 10, 61 N.E.2d at 112.

13. Oberlander, supra Note 10, 200 N.E.2d at 272; see also Friese, supra Note 10, 88 N.E.2d at 3.

dence is credited where it is based on testimony of "probabilities but not on conjecture or speculation." [14]

In *Brownhill* itself the court distinguished, but reaffirmed, its prior ruling in Gechijian v. Richmond Ins. Co., 305 Mass. 132, 142, 25 N.E.2d 191, 197 (1940), upholding the testimony of a fire chief who stated the cause of the fire to be spontaneous ignition. In *Gechijian* the expert arrived at his conclusion by examining the premises and eliminating incendiarism as a possible cause, the court allowing him to testify that he "did not observe anything that indicated to him that the fire was set." 25 N.E.2d at 197. Thus even in *Brownhill* the elimination of possibilities approach was recognized.

■ We agree with the formulations expressed in the post-*Brownhill* cases. Whatever the particular facts which caused the court in *Brownhill* to reject the fire chief's testimony there, we think that *Brownhill* itself and the post-*Brownhill* formulations are consistent with the approach taken in the California case, George v. Bekins Van & Storage Co., *supra*, and represent the approach to be taken here. Further, we think that, where a fire investigator identifies the cause of a fire in terms of probabilities, as opposed to mere possibilities, by eliminating all potential causes of the fire but one, that testimony is not only relevant, but in some circumstances may be a basis for decision. Bearing on the credibility of such testimony is the thoroughness with which the expert identifies all the potential causes and the soundness of his reasoning in eliminating each one.

We recognize that the matter of prevention, detection and control of fires is a major governmental concern. The men trained in this science and exposed through experience to the problem are called upon to execute their jobs with exactitude. We also recognize that when smoking causes a fire it is highly likely that the offending cigarette butt or ash will dissolve in smoke in the ensuing conflagration. Thus direct evidence of smoking will be hard for the fire investigators to find, and they will have to form their opinions by way of exclusion of other possibilities.

Often the plaintiff in a fire case, at least where smoking is the cause, can hardly be expected to do more than present expert testimony of this sort as to the fire's cause, and support that testimony by other, direct, evidence of smoking in the premises shortly before the fire began. His burden might well be impossible if his experts also had to discover some direct evidence of a cigarette butt or ash; and placing such a burden on him would be unnecessarily harsh in view of the reliability of expert testimony even when arrived at by a process of elimination.[15]

### III

Because of his ruling that there was insufficient evidence of negligent smoking, the trial judge found it unnecessary to rule on the liability of Troiano. On remand, should the court find that careless smoking did cause the fire, the issue of Troiano's alleged negligence in giving Whitaker a key and in failing adequately, according to appellants, to prevent fires would be before the court.

14. *Lauble, supra* Note 10, 170 N.E.2d at 722; *see also Sevigny, supra* Note 10, 151 N.E.2d at 261; *Felch, supra* Note 10, 93 N.E.2d at 408; *Carter, supra* Note 10, 64 N.E.2d at 694–695.

15. On oral argument Troiano argued that, even if the conclusion is accepted, based on the fire investigator's testimony or the Faulds statement or both, that smok-

ing by Troiano's employees caused the fire, there is no evidence of negligent or careless smoking. The simple answer to this is that once a sufficient case has been made out that smoking is the cause the case is not ended—the burden has merely shifted to the defendant to rebut the inference that careful smokers ordinarily do not burn down buildings.

248

Also, the import of the lease clause in which Troiano assumed responsibility for his employees' negligence would have to be determined.

Remanded for further proceedings.

TAMM, Circuit Judge (dissenting in part):

I dissent from so much of Part I of the majority opinion as rules that the statement of Faulds to the fire marshall should have been admitted in evidence. While it is currently the vogue, as the majority states, to admit "declarations against interest" [1] when "a witness is unavailable to testify," this evidentiary rule is of very recent origin. The traditional "declaration against interest" exception to the hearsay rule was limited to declarations made by a deceased person against a pecuniary or proprietary interest, spontaneously made, and relating to a present, immediate interest not contingent upon the happening of some remote event. This was the absolute rule in England and generally throughout the United States into the 1930's. *See* J. MCKELVEY, ON EVIDENCE §§ 209–215 (4th Ed. 1932). Since that time, however, courts have dissipated the effectiveness of this time-proven guarantee of the trustworthiness of this type of evidence by dissolving on an ad hoc basis the individual elements necessary to bring testimony within the exception. The resulting olio, as judges

stroll along unpredictable paths, has created uncertainty and even confusion at both bar and bench, adding unfortunate delay to the disposition of many cases. Preciseness in the law of evidence has lost its equilibrium because of the classic conflict between competing claims of continuity and change in the law. Some courts cling, in panic, to the past while others view all tradition and the doctrine of stare decisis with aggressive hostility. Without evaluating the merits of either philosophy but appraising court rulings in this field of the law of evidence, it is obvious that the gravamen of the exercise results in a long series of inconsistent, conflicting and confusing opinions predicated not upon fixed principles, but upon a subjective determination of what is best in a particular case. The evil in the system is, of course, that as heresies have a habit of turning into newly minted dogma, the individual subjective ruling becomes "case law" and is the springboard from which the next ad hoc ruling springs, like Prometheus unbound, into what we, most inaccurately, define as the *law* of evidence. Each such legal exercise reduces the stability of principles of evidence to a whiter shade of pale and reveals the void of logic at the core of such procedure. To the conscientious trial judge attempting to conduct his court as a court of law governed by established and recognizable

---

1. I point out that the authorities relied upon by the majority rendered certain statements admissible either because they were made "within the scope of employment," Martin v. Savage Truck Line, Inc., 121 F.Supp. 417 (D.D.C.1954); Koninklijke Luchtvaart Maatschappij N. V. KLM Royal Dutch Airlines Holland v. Tuller, 110 U.S.App.D.C. 282, 292 F. 2d 775 (1961) or because they were excited utterances, Wabisky v. D.C. Transit System, Inc., 114 U.S.App.D.C. 22, 309 F.2d 317 (1962). Further, the unique factual situation existing in Pennsylvania R.R. Co. v. Rochinski, 81 U.S. App.D.C. 320, 158 F.2d 325 (1946) sharply and accurately illustrates the very evil which I herein condemn. The court, obviously convinced that the witness, J. C.

Solomon, had given perjured testimony, but unable to pass upon the credibility of that witness stretched and contorted the "against his interest" principle beyond all existing or recognized bounds. Lacking confidence (and I daresay belief) in this pronouncement they sought to justify their ruling on grounds of materiality and credibility, while furtively suggesting, but not "considering," that spontaneous utterance might be an independent ground for admission. I question that had the court had firm assurance in the correctness of its "against interest" ruling it would not have found it necessary to argumentatively fortify its holding by suggesting three alternative justifications.

rules, each random abandonment of previously recognized governing precepts operates like the ring of Gyges—it bestows the blessing of invisibility upon standards regulating admissibility of evidence. In the meanwhile, however, the judicial migraine is compounded as judges redouble their energies (while forgetting the objective of certainty in the law) to distort and misshape established rules in order to reach a result in a particular case which is harmonious with their view of the proper direction of society. From the everbuilding disarray of directionless discourse these rulings constitute "derelict[s] on the waters of the law," [2] created basically by courts which find accuracy in procedure an uninteresting quality.

Without further indulging in logomachy, I repeat the age old axiom that "bad cases make bad law." Here we have a "bad case" with the traditional legal result. The majority, then, admit the statement of an off-duty laborer, made completely outside the scope of his employment and concerning conduct completely unrelated to the nature, scope, purpose or bounds of that employment, concerning an occurrence when he, after an all night drinking orgy, was a trespasser upon the employer's premises, outside the hours (and apparently the days) of his employment. The employee has disappeared. He is consequently unavailable for cross examination, and the factors that normally go into the determination of a witness' credibility are completely withheld from the trier of facts. I cannot subscribe to the majority action which puts a label of admissible evidence upon such a statement on the ludicrous conclusion that this laborer's employment constituted such a pecuniary or financial interest as to guarantee the accuracy of this statement.

The tragic result of my colleagues' ruling is a gross enlargement of the part at the expense of the whole.

2. Lambert v. California, 355 U.S. 225, 232, 78 S.Ct. 240, 245, 2 L.Ed.2d 228 (1957)

(dissenting opinion of Justice Frankfurter).