### KENNETH S. JOHNSON v. FREDERICK C. SLEIZER, INDIVIDUALLY AND d.b.a. THE AQUARIUM BAR AND LOUNGE.

129 N. W. (2d) 761.

July 3, 1964—No. 39,042.

---

[2]London Guarantee & Acc. Co. v. Woelfle (8 Cir.) 83 F. (2d) 325; see, Robinson v. United States, 113 App. D. C. 372, 308 F. (2d) 327.

*Norman H. Nelson, Alden H. Gjevre,* and *Lanier, Knox & Shermoen,* for appellant.

*G. L. Dosland, Dosland & Dosland,* and *Richard W. Anderson,* for respondent.

NELSON, JUSTICE.

Suit was brought by Kenneth S. Johnson against Frederick C. Sleizer, individually and doing business as The Aquarium Bar and Lounge, for injuries sustained as the result of an alleged assault and battery by an employee of Sleizer, one Del Meyer. A verdict of $2,500 was rendered by the jury in favor of Johnson. Defendant appeals from the judgment entered thereon and from the order denying his motion for a new trial.

Viewing the evidence in the light most favorable to the verdict, the facts may be stated as follows:

In the early part of the evening on which the injury occurred, plaintiff and his wife, Barbara, after having a full dinner had visited the home of plaintiff's sister for a time. While there they consumed one beer apiece. Between 9:30 and 10 p. m. on the same evening, February 17, 1962, plaintiff and his wife went to The Aquarium Bar and

Lounge. There they met two friends, David and Lenora Halvorson. The two couples sat in a booth in the bar section of the establishment, talking and from time to time playing a bowling machine near the booth. From the time of their arrival until the alleged assault by Meyer, plaintiff was served four or five beers. Sometime between 11 and 11:30 p. m. he went from the bar section of The Aquarium to what is referred to in the record as the lounge, an adjoining room where live entertainment is furnished. On this occasion, plaintiff returned to the bar section without incident shortly after leaving. About 12:40 a. m. Johnson again entered the lounge, but when he attempted to return to the bar section a few minutes later he was stopped by Arthur Melbye, an employee of defendant. Melbye told plaintiff that if he intended to return to the bar section he would have to go outside the establishment by a side door in order to do so and walk around to the front door. The owner had given these instructions to his employees in order to facilitate the computation of the entertainment tax which defendant was required to impose on patrons in the lounge. Plaintiff told Melbye that he (plaintiff) could go into the bar without walking around the establishment if he felt like it. Melbye said, "Maybe so. You are as big a man as I am and younger." At about this time Meyer, another employee of defendant, came up to plaintiff and repeated the same instructions. An argument followed immediately and plaintiff grabbed Meyer by the arms. The two men scuffled without striking at each other and fell to the floor. What appeared to be the commencement of a fight was thus broken up. Johnson was led to the side door by Meyer and another of defendant's employees.

The record indicates that Meyer then struck plaintiff in the face with his right hand, which had been encased in a cast of plaster of Paris. As a result of the blow plaintiff fell to his knees when Meyer again struck him about the face with his right hand two or more times. It is not clear from the record which of these last blows landed.

Although Meyer was also named as defendant in this action, plaintiff was unable to obtain service upon him and he apparently has left the state.

Plaintiff was taken to the hospital immediately following the alleged

assault. Defendant insists that he immediately discharged Meyer from his employment. The record shows that shortly thereafter Meyer went to the hospital and talked to plaintiff while he was in the emergency room. During the trial the court below, overruling defendant's objections, allowed several witnesses to testify as to the statements then made by Meyer to plaintiff. According to the witnesses, Meyer said that he was "sorry it happened" and that he had "lost his head." Other statements attributed to him were: "I never lost my temper before. I don't know why I did it tonight," and "I don't know what happened."

■ Defendant contends that these statements were inadmissible as hearsay. We reach the conclusion that they were declarations against Meyer's pecuniary interest and were therefore properly admitted as evidence by the trial court.

This court has long recognized as an exception to the hearsay rule that declarations of a deceased person which are relevant to an issue between the parties are admissible when such declarations concern a matter of which the declarant was personally cognizant, were against his pecuniary and proprietary interest, and were made with no probable motive to falsify.[1]

So far as the record shows, Meyer was not deceased at the time of the trial. It is clear, however, that he was both absent and unavailable. The record shows that diligent efforts were made to find him and it is quite apparent that he was not within the jurisdiction of the court. Plaintiff contends that those circumstances permit the statements Meyer made at the hospital to be admitted into evidence as declarations against his pecuniary interest. We reach the conclusion that if the other requirements of the exception are satisfied, his unavailability as a witness is sufficient to qualify the statements as declarations against interest and thus to justify their admission into evidence. We said in Dempsey v. Meighen, 251 Minn. 562, 570, 90 N. W. (2d) 178, 183, quoting from 5 Wigmore, Evidence (3 ed.) § 1455:

"The Exception requires, like most of the others, first, a Necessity for resorting to hearsay * * *, i. e., the death of the declarant, or some

---

[1]See cases collected in 7 Dunnell, Dig. (3 ed.) § 3298.

other condition rendering him unavailable for testimony in court * * *."

Clearly, the necessity for resorting to hearsay is just as great when the declarant is outside the jurisdiction or cannot be found after a diligent search as when he is dead. In each case we are confronted with the alternative of either accepting the hearsay statement without the test of cross-examination, or leaving the declarant's knowledge entirely unutilized.

Beebe v. Kleidon, 242 Minn. 521, 65 N. W. (2d) 614, is the only Minnesota case found in which reference has been made to whether the declarant must be deceased in order to admit his statements as declarations against interest. We sustained the trial court's exclusion of the declaration therein on the ground that it was not against the declarant's interest and also said (242 Minn. 525, 65 N. W. [2d] 617):

"* * * Neither can such testimony qualify as a statement against interest since evidence is admissible under that exception to the hearsay rule only when the declarant is deceased at the time of trial."

Whether or not this last statement might be regarded as dictum, we nevertheless conclude that it is not the better rule and refuse to follow it here. It is sufficient if the declarant is unavailable as under the circumstances of the instant case. In McCormick, Evidence, § 257, the author said:

"* * * [T]he early English cases limited the scope of the exception to decedents' declarations and the only question has been whether other grounds of unavailability would be accepted. * * * Any reason why the declarant cannot be brought in at the trial should suffice, such as * * * absence of the witness from the jurisdiction or inability of the party to find him * * *."

In 5 Wigmore, Evidence (3 ed.) § 1456, the author states:

"The Necessity Principle * * * signifies the impossibility of obtaining other evidence from the same source, the declarant being unavailable in person on the stand. Whenever the witness is practically unavailable, his statement should be received.

"*Death* is universally conceded to be sufficient * * *.

\*     \*     \*     \*     \*

"The principle of Necessity is broad enough to assimilate other causes; but the rulings upon causes other than death are few. They are ill-judged, so far as they do not recognize the general principle of unavailability. *Illness* and *insanity* should be equally sufficient to admit the statements; as well as *absence from the jurisdiction.*"[2]

Though cases may be found which hold that the declarant must be deceased in order for his statements to qualify as declarations against interest, we subscribe to the rule established by those decisions which have held it to be sufficient if the declarant is out of the jurisdiction or cannot be located after due diligence.[3]

■ On whether Meyer's statements were against his pecuniary or proprietary interest, Halversen v. Moon & Kerr Lbr. Co. 87 Minn. 18, 91 N. W. 28, and Windorski v. Doyle, 219 Minn. 402, 18 N. W. (2d) 142, are controlling. In these two cases this court made it clear that a statement acknowledging facts which would give rise to liability of un-liquidated damages for tort is a declaration against pecuniary interest. We thus conclude that the statements of Meyer "may reasonably furnish a basis of a pecuniary claim against him." Windorski v. Doyle, 219 Minn. 410, 18 N. W. (2d) 147.

■ Defendant's second assignment of error in effect is that insurance was injected into the trial and precluded a fair and impartial

---

[2]In the 1962 supplement to § 1456 the author adds that the statement should also be admitted if after due diligence the declarant cannot be found in the jurisdiction.

[3]Alabama Power Co. v. Ray, 249 Ala. 568, 32 So. (2d) 219; Barker v. New (D. C. Municipal Court of Appeals) 107 A. (2d) 779; Neely v. Kansas City Public Serv. Co. 241 Mo. App. 1244, 252 S. W. (2d) 88; G. M. McKelvey Co. v. General Cas. Co. 166 Ohio St. 401, 142 N. E. (2d) 854, 65 A. L. R. (2d) 626; Syracuse Engineering Co. v. Haight (2 Cir.) 97 F. (2d) 573; Walnut Ridge Mercantile Co. v. Cohn, 79 Ark. 338, 96 S. W. 413; Pennsylvania R. Co. v. Rochinski, 81 App. D. C. 320, 158 F. (2d) 325. See, also, Mr. Justice Hilton's statement of the rule in his dissent in State v. Voges, 197 Minn. 85, 266 N. W. 265.

determination of the parties' rights. The occurrences complained of are the following:

On cross-examination under the rules plaintiff's counsel asked defendant:

"Q. Do you recall on February 23rd at approximately 3:00 o'clock in the afternoon telephoning Mr. Johnson?

"A. I did not, no, sir.

"Q. Don't you remember calling him and telling him that if he would change his story from * * * being beaten to falling down on your stairway he could collect on it, collect on your insurance?"

He later asked Mrs. Lenora Halvorson:

"Q. As I went over my notes during the noon hour I noted that you said something about 'we went back and got Kenney's coat.' What do you mean? What did you mean by that? I missed it at that time.

"A. Well, David, my husband, called Fred and asked him what insurance he had * * *."

We cannot, under all the circumstances, consider these references to insurance so prejudicial as to warrant a new trial. If anything, the jury most likely got the impression that defendant did not have insurance to cover any liability he might incur because of an assault by one of his employees. Moreover, after the answer by Mrs. Halvorson, the trial court admonished the jury as follows:

"Members of the Jury, the matter of insurance isn't involved in this lawsuit. There was a statement just made by the witness which was improper and you should disregard it as though you had never heard it. I don't want you to get side-tracked on some other issue that isn't in the case."

■ Defendant argues that the evidence was insufficient to establish that Meyer used more force than was reasonably necessary under the circumstances.

Viewing the evidence in the light most favorable to the verdict, we think it clearly establishes that the initial scuffling between Meyer and plaintiff had been broken up and that Meyer struck the first blow

as plaintiff was being led out of the establishment. He fell to his knees and did not strike back. Meyer struck several more times at plaintiff. It will be noted that all of the blows were struck with Meyer's right hand, which was in a cast. Such evidence does not require extended discussion. It reasonably supports the jury's verdict in plaintiff's favor.

Finally, defendant contends that the trial court erred in submitting the question of punitive damages to the jury and in its instructions thereon.

In Lamson v. G. N. Ry. Co. 114 Minn. 182, 130 N. W. 945, it was held that where the evidence shows that the verdict is for an amount not larger than plaintiff is fairly entitled to as compensatory damages, it will be presumed that the jury did not allow punitive damages, and an instruction that they might is without prejudice. In the instant case plaintiff sustained fractures of the nasal bone and also the right maxilla, the bone making up the orbit of the eye. When admitted to the hospital, he was bleeding and had bruises, discoloration, and marked swelling of the face around the nose and eyes. He also had a dislocation of the septum which his doctor recommended be repaired by an operation. Viewing these items of damage together with medical and hospital expenses, we think it fairly appears that the jury's verdict of $2,500 was wholly compensatory. If there was error in the trial court's submission of punitive damages to the jury, it was therefore without prejudice under the rule of the Lamson case.

Affirmed.