POTTER v. FINAN.

1. EVIDENCE — DECLARATION AGAINST INTEREST — ADMISSIBILITY — HEARSAY.

The requirements for the admission into evidence of an out-of-court declaration are that the declaration state facts which are against the pecuniary or proprietary interest of the declarant when the declaration is made, and that the declarant be unavailable at the time of trial, although some authorities also require that the declaration concern a fact personally cognizable by the declarant and that circumstances be such as to render it improbable that a motive to falsify existed.

2. INTOXICATING LIQUORS — AUTOMOBILES — EVIDENCE — PROXIMATE CAUSE—HEARSAY.

Alleged declarations against pecuniary interest, made by the driver of a vehicle which collided with one driven by plaintiff, held, not admissible in evidence against defendant bar owner in action under the dramshop act, where such statements were, at most, only qualified admissions of limited intoxication, giving no information as to whether said driver was negligent in the operation of his vehicle or whether such negligence was a proximate cause of the collision (CLS 1961, § 436.22).

3. SAME—AUTOMOBILES—DECLARATIONS AGAINST INTEREST—ADMISSIBILITY—HEARSAY—CROSS-EXAMINATION.

Alleged declaration against interest by the driver of a vehicle which collided with plaintiff held, inadmissible in evidence in plaintiffs' action under the dramshop act against defendant

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 617 et seq.
[2, 3] 30 Am Jur, Intoxicating Liquors § 558. ·
[4, 5] 30 Am Jur, Intoxicating Liquors § 538; 38 Am Jur, Negligence § 343.
Admissibility of evidence, and propriety and effect of questions, statements, comments, etc., tending to show that defendant in personal injury or death action carries liability insurance.    4 ALR2d 761.

bar owner, where such statements at most admitted only limited intoxication, giving no information as to whether said driver negligently operated his vehicle or whether such negligence was a proximate cause of the collision, and the deposition of said driver was admitted into evidence at trial, including cross-examination by plaintiffs' counsel, who had the benefit of the inconsistencies revealed in the two out-of-court statements of the witness, and chose not to avail himself of their use in cross-examination (CLS 1961, § 436.22).

4. SAME—SURETY BONDS—ARGUMENT—INSTRUCTIONS.

Claim that prejudicial error was committed by the trial judge in (1) allowing the plaintiffs' counsel to inform the jury, on closing argument, that any portion of a judgment paid by the statutory surety under defendant's liquor bond could be collected by the surety from defendant and (2) instructing the jury that defendant's surety under the statutory liquor bond was entitled to recover from defendant for any amount which the surety might be required to pay on defendant's behalf *held*, without merit, where plaintiffs' counsel informed the jury, on opening argument, that the bondsman was responsible for damages suffered by the illegal sale of liquor, since the argument and instruction complained of were necessary to correct the erroneous impression so caused with respect to the liability of the surety, although it would have been better practice for the subject to have been excluded from the case (CLS 1961, §§ 436.22, 500.3030).

5. INSURANCE—CONSTRUCTION OF STATUTES—REFERENCE TO LIQUOR LICENSEE'S SURETY BOND—PARTIES.

Statute banning reference to the existence of insurance during the course of trials *held*, inapplicable to surety bonds issued pursuant to the Michigan liquor control act, since it is possible for a bonding company to be made a party in actions brought thereunder, although better practice might indicate that such reference would best be curtailed when the bonding company is not a party defendant (CLS 1961, §§ 436.22, 500.3030).

Appeal from Manistee; Stephens (Rupert B.), J. Submitted Division 3 December 7, 1966, at Grand Rapids. (Docket No. 2,269.) Decided May 23, 1967.

Complaint under the Michigan liquor control act by Barbara Ann Potter and Wilber Potter against

Stanley M. Finan, doing business as Sleepy Owl Kafe, for damages as a result of an automobile accident between a vehicle driven by Mrs. Potter and another vehicle driven by one Noel Shannon. Verdict and judgment for defendant. Plaintiffs' motion for new trial denied. Plaintiffs appeal. Affirmed.

*Donald G. Jennings,* for plaintiffs.

*Charles H. Menmuir* and *Max C. Hamlin,* for defendant.

FITZGERALD, J. Plaintiffs Barbara Ann Potter and Wilber Potter began this action to recover damages against defendant Finan, proprietor of the Sleepy Owl Kafe in Manistee county, following an automobile accident in which Mrs. Potter was injured. The collision was between her car and that of one Noel Shannon who had been a customer at the Sleepy Owl shortly before the accident. The action against the tavern keeper was begun under the Michigan liquor control act, specifically section 22 thereof, CLS 1961, § 436.22 (Stat Ann 1957 Rev § 18.933).

A pretrial hearing resulted in defendant's reserving the right to join Noel Shannon as a party-defendant, a step which was never taken, despite the granting by the court of a motion that he be joined, nor was Shannon present at the trial.

There were no eyewitnesses to the accident and neither Mrs. Potter nor Shannon had any recollection of the facts of the accident. Two out-of-court statements were taken from Shannon, one by an investigator employed by plaintiffs' counsel and the other by State Police.

Prior to trial, the deposition of Shannon was taken by defendant's counsel, emphasizing his activities the day of the accident and attempting to pinpoint his alcoholic intake.

At the jury trial of the cause, the Michigan State trooper who had policed the accident scene, and some time later had gone to the hospital to talk to the victims of the accident, was interrogated as to what Shannon had said in the hospital. The testimony was objected to on the ground of hearsay and the court sustained the objection.

Later in the trial, plaintiffs' investigator was questioned concerning the contents of the statement which he and plaintiffs' counsel took from Shannon, without offering the statement in evidence. When asked whether he had a present recollection of the contents of the statement, objection was again made that this was hearsay and the court sustained the objection.

Plaintiffs' counsel placed in evidence the deposition which had been taken from Shannon and the deposition was read in its entirety, including cross-examination.

During the course of the trial, more specifically in the opening statement, plaintiffs' counsel made reference to Michigan's liquor law stating that in order to obtain a license to sell liquor by the glass, a bond must be filed for the reason that "if anybody is injured as a result of an illegal sale in their establishment, then they are responsible for the damages suffered by the person who is injured by the illegal sale."

Defense counsel, in his final argument, acknowledged the opening statement relating to the filing of the bond and elucidated further on the theory and practice of liquor bonds, stating, "and the only purpose of that bond is, if there is any judgment

entered and he doesn't pay it, then the bonding company have to come forth with $5,000, the amount of the bond in this type of case. But then they go right back at him, and take it out of him." The trial court instructed further on the function of a bond in such a case.

The jury returned a verdict of no cause of action. Following the entry of judgment, plaintiffs' counsel moved for a new trial on the ground that the court should have permitted the police officer and the investigator to narrate the contents of Shannon's statements to them, and further claimed the court erred in permitting defendant's counsel to refer to the liquor bond and also in instructing the jury as to the effect of the bond. This motion was denied and appeal to this Court followed.

In reviewing the record, the cruciality of the statements becomes painfully clear: Shannon's statements are all that plaintiffs have to establish the liability of defendant tavern keeper.

At this point, the furthering of this opinion is served by the inclusion of the 2 statements in issue, recalling, of course, that there was also a deposition which *was* introduced in the trial of the cause and which had afforded both sides the opportunity of direct and cross-examination.

The statement given to the investigator for plaintiffs' counsel is as follows:

"My name is Noel Shannon, I am 37 years old, divorced, and live at 723 Ramsdall in Manistee, Michigan. I have worked at the Michigan Tool Company in Manistee as a shake-out man in the foundry for a little more than 30 days. Before that I worked for Montgomery Wards and Norm Jensen, the Rambler Dealer, doing sales work. On Saturday, October 19, 1963, I was involved in an automobile accident in Manistee county on highway

M–55. I was driving a 1957 Lincoln 4-door which I had purchased from Northland Motors several days before the accident. I did not work the day of the accident because it was Saturday. I woke up in the late morning that day and about 1 or 1:30 that afternoon I went out to the Sleepy Owl Tavern on US–31 in Parkdale. I stayed there until about 6 p. m. While there, I played pool with several different men during the afternoon, but I don't recall exactly who they were. A new girl, Pat, who wears glasses, was the only person working in the bar. I had about 10 regular size bottles of beer while I was there, always Blatz, but I am certain I was not intoxicated at any time that day. After I left the Sleepy Owl I drove my Lincoln car north on US–31 to M–55, made a right turn at the blinker, and headed east or south. I recall making the turn, passing the Pines where there were quite a few cars in the parking lot, and crossing the bridge over the Manistee river. That is the last thing that I remember about that trip. The next thing I remember is waking up in Mercy hospital at Manistee the next day. When I woke up I was in bed and had stitches in my face. I was kept in the hospital for four days, until the 23d, under the care of Dr. Schwartz. I am still disabled because of my three fractured ribs and the doctor says I can't work until December 1st. Concerning the accident, I recall that I had my car lights on at the time, but I do not recall seeing the other car or even if there was another car in the accident. I just don't recall anything after the time I crossed the bridge on M–55. I was alone in my car.

"I have read this statement today, Friday, November 8, 1963, which I gave to Mr. Donald Jennings, and it is true and correct to the best of my recollection.

                    "NOEL G. SHANNON"

The statement given to the State police officer
is as follows:

"STATE POLICE CONFIDENTIAL INVESTIGATION
"Investigating Trooper: Dean A. Van Natter #325
    "Questioned Noel Garrard Shannon at Mercy
Hospital. He stated he had six hours sleep before
accident. Got up at 11 a. m., spent day around
Manistee. At 3 p. m. went to Sleepy Owl. Had
10 beers and played pool. Was served by waitress
named "Gerry".
    "Did not know when he left bar. He stated it
was before closing time this a. m. He recalled
leaving bar and turned on headlights. Drove to
M–55 turned south toward girl friends. He remem-
bered crossing bridge on M–55. When asked if, in
his own opinion, did he think he was intoxicated
at the time of the accident he replied 'There is
no use lying about it, I believe I was, but not too
much.' He could not remember speed or the loca-
tion of the accident.
    "Shannon was issued a summons for reckless
driving on October 28, 1963. On November 1, 1963,
he appeared before Justice Judson King and en-
tered a plea of guilty. Subject was ordered to
pay a fine of $40 plus $5 costs.
    "Officers attempted to question Barbara Potter
this date. Due to injuries she could not be ques-
tioned. Hospital was requested to advise the Post
prior to her dismissal from the hospital.
    "Complaint closed December 11, 1963."

The requirements for an out-of-court declaration
to be admitted as an exception to the hearsay rule
are rigid. 31A CJS, Evidence § 217. First, the
declaration must state facts which are against the
pecuniary or proprietary interests of the declarant
when the declaration is made and second, the de-
clarant must be unavailable at the time of trial.
Other requirements sometimes cited by text writers
are that the declaration must concern a fact per-

sonally cognizable by the declarant and that the circumstances must render it improbable that a motive to falsify existed, both of which conditions are fulfilled here.

The question of the unavailability of the witness need not be commented upon at length since it appears to have been adequately demonstrated by the sheriff's testimony that Shannon was not within the county and that his exact whereabouts were unknown.

That the declarations are against the proprietary or pecuniary interests of the declarant is harder to establish and is the crux of our consideration.

Plaintiffs state that Shannon's civil liability is determined by his negligent operation of his motor vehicle and further that it is impossible for Shannon's statements concerning his intoxication not to establish the basis of his negligence. They make the statement, "The admission of his intoxication, when combined with his admitted operation of a motor vehicle, obviously rendered Mr. Shannon in violation of the statutory provision against driving while under the influence of intoxicants." Plaintiffs continue this line of reasoning with the statement, "This violation would render Mr. Shannon, under the case law of this State, guilty of negligence *per se* in the operation of his motor vehicle which, if it were a proximate cause or legal cause of the accident, would render Mr. Shannon civilly liable to the plaintiffs."

Plaintiffs then advance to the conclusion that the existence of a *possible* liability claim for negligence makes Shannon's statement against his own pecuniary interests. Such a view is not the most readily supportable view and, indeed, is countered by the following quote from the brief supplied by defendant:

"As to possible civil liability 'for the results of the accident,' it would seem clear that the intoxicated condition of a driver does not in itself cast civil liability upon him for a collision in which he may have been involved. Liability depends on the operation of the motor vehicle in such manner as to be a proximate cause of the collision and the resulting injuries. Shannon's statements included no facts that he drove on the wrong side of the highway, at an excessive rate of speed, or otherwise in a negligent fashion."

While there is some small body of authority for the proposition that a statement acknowledging facts which would give rise to liability for unliquidated tort damages is a declaration against pecuniary interest, the instant statements must be tortured to arrive at such a result. See *Johnson v. Sleizer* (1964), 268 Minn 421 (129 NW2d 761).

We are further confronted with a fact in the instant case which appears not to be presented in any other reported case, *i. e.*, the presence of a deposition by the declarant of the hearsay statements which are sought to be introduced. Couple this with the fact that counsel at the time of the deposition had the benefit of the inconsistencies revealed in the 2 out-of-court statements and chose not to avail himself of this in cross-examination and we are compelled to hold that the trial court reached the right conclusion in excluding the statements.

Introduction at the trial of the out-of-court statements would have offered nothing more than a qualified admission of a limited degree of intoxication. Shannon's true role in the question of negligent operation of a motor vehicle would have remained as much of a mystery as it does today in view of the fact that the statements reveal nothing bearing

directly on his liability as regards excessive speed or negligent operation of the car.

On the question of whether the reference to the so-called "liquor bond" constituted reversible error, we find ourselves in a more excruciating position.

. The statute banning reference during the course of trials to insurance is as follows (CLS 1961, § 500.3030 [Stat Ann 1957 Rev § 24.13030]):

"In the original action brought by the insured person, or his or her personal representative in case death results from the accident, as mentioned in section 3006, the insurer shall not be made or joined as a party defendant, nor shall any reference whatever be made to such insurer or to the question of carrying such insurance during the course of trial."

Counsel for defendant suggests that this exclusionary rule does not apply to sureties and surety bonds, and that the reason for exclusion of insurance references is not analogous to bonds.

In *Weatherly* v. *Kent Circuit Judge* (1916), 194 Mich 46, the bar owner, as principal on the bond, was permitted to intervene in an action where the surety was sued alone. It would appear that, in such an instance, the jury would be fully cognizant of the presence of a surety bond and the respective liability of the parties, and that an instruction might be called for to explain the situation.

The particular posture of the instant case makes decision of whether the bond should have been mentioned more difficult, since the bonding company is not a party.

We can say in concert with the trial court's opinion denying a new trial that:

"The court is of the opinion there was no reason to mention the bond and that it would have been better to have tried the case without reference

thereto, the same as in cases where the defendant
is protected by insurance. The bonding company
was not a party defendant where some explanation
of its liability would have been proper. In the in-
stant case the remark could have created in the
minds of the jury the impression that Mr. Finan,
the defendant, was merely a nominal party and that
any judgment rendered against him would be paid
from the bond.

"Under these circumstances the court was of the
opinion that the defendant had a right to point out
to the jury that, if a judgment was rendered against
the defendant and was paid by the bonding com-
pany, it had a right to recover any sums paid by
it from Mr. Finan. The court was likewise of the
opinion, in view of plaintiffs' opening statement,
that the defendant was entitled to an instruction
explaining the true situation to the jury."

Since it is possible for a bonding company to be
a party to the suit in actions of this particular kind,
we can see no rationale for absolute exclusion of
references to bonds as there is in the case of insur-
ance. While the better practice might indicate that
such references would best be curtailed, we do not
believe that on the record before us reversible error
was committed.

The trial court adequately sums up situations
which confronted court and counsel in the heat of
the trial and these observations we endorse as an
adequate resolution of the objection made.

"Plaintiffs' primary objection to defendant's argu-
ment and the court's instruction is the fact that the
argument and instruction are entirely immaterial
and irrelevant to the basic issues of the case. The
plaintiffs do not question the correctness of the
court's instruction or of the defendant's argument;
their objection is to the giving of the instruction
and the argument at all.

"Plaintiffs call the court's attention to the holding in *Benmark* v. *Steffen* (1965), 374 Mich 155, wherein the Supreme Court reversed the trial court for error on the part of the trial judge and improper conduct of both counsel. One of the most serious errors on the part of plaintiff's attorney in that case was the interjection of the insurance issue in violation of CLS 1961, § 500.3030 (Stat Ann 1957 Rev § 24-.13030). Perhaps it should be stated here that in the instant case none of the incidents occurred which were common in *Benmark*. Discussions on law and evidence of any length were had outside the presence of the jury. Counsel for both sides conducted themselves throughout the trial in keeping with the highest standards of the profession, being polite to each other and courteous to the court. I was satisfied that plaintiffs' counsel did not in his opening statement refer to the bond with the intention of deliberately prejudicing the jury. It was one of those remarks which are sometimes inadvertently made during the trial of a law suit. But, the statement having been made and the possibility existing that the jury believed any judgment against the defendant would be paid by the bonding company, defendant had a right to have the jury appraised of the true situation.

"This court is of the opinion reversible error was not committed during the trial. The effect of the instruction and the argument was to advise the jury that, if a judgment was rendered against Mr. Finan, he would pay it. This is as it should have been and as it would have been had no reference been made to the bond in the first instance."

Affirmed. Costs to appellees.

QUINN, P. J., and HOLBROOK, J., concurred.