DANIEL CECERE and JOAN CECERE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cecere v. Commissioner
Docket No. 5827-72
United States Tax Court
T.C. Memo 1975-371; 1975 Tax Ct. Memo LEXIS 2; 34 T.C.M. (CCH) 1593; T.C.M. (RIA) 750371; December 31, 1975, filed F. X. McCormick, for the petitioners. John J. O'Toole and Marwin A. Batt, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax and additions to tax for the fraud penalty (section 6653(b)) as follows: Additions Year
Deficiency
to Tax
1967
$11,595.86
$5,797.93
1968
12,142.58
6,071.29 The issues to be decided are: (1) Whether Petitioner Daniel Cecere, as a partner, received interest income of $29,900 and $27,941 in the taxable years 1967 and 1968, respectively, which he failed to report as income. (2) Whether the failure to report such interest income was due to fraud within the meaning of section 6653(b) *4 of the Code. [1]
(3) Whether assessment of additional tax for the taxable year 1967 is barred by operation of the statute of limitations. (4) Whether the income tax return for 1967 was a joint return of petitioners. (5) Whether Petitioner Joan Cecere is relieved from liability for tax and fraud penalty for the taxable years 1967 and 1968 by operation of section 6013(e) of the Code. (6) Whether petitioners are entitled to a bad debt deduction in the taxable year 1968. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference. At the time of filing their petition, Joan Cecere resided in West Orange, New Jersey, and Daniel Cecere was an inmate at the Federal Penitentiary, Atlanta, Georgia. Petitioners Daniel and Joan Cecere were husband and wife during the years in question. A Federal income tax return in the name of Daniel and Joan Cecere, for the taxable year 1967, and a joint Federal income tax return for the taxable year 1968 were filed with the District Director of Internal Revenue, Newark, New Jersey. The *5 1967 return was filed in the name of Daniel and Joan Cecere. In addition to income and deductions reported by Daniel Cecere, all income and deductions of Joan Cecere are reported on the 1967 return but it was not signed by Joan Cecere. On January 28, 1970, Petitioner Daniel Cecere and Angelo DeCarlo were convicted in the United States District Court for the District of New Jersey for violations of 18 U.S.C. sections 892 and 894. Those sections provide criminal penalties for extortionate extensions of credit and for collections of credit by extortionate means. Cecere and DeCarlo, together with Joseph Polverino and Peter Landesco, were charged with extortionate credit operations as to loans made to Louis Saperstein. Petitioner Daniel Cecere and his partners lent money to Saperstein in 1967 and 1968 and Saperstein paid interest to them in those years at the rate of 1-1/2 percent per week, or $1,725 per week. As of September 13, 1968, Saperstein owed Cecere and his partners $145,000. On that date, the partners gave Saperstein 3 months to repay the principal of the loan and they raised the interest to $2,000 per week. On November 14, 1968, Saperstein delivered *6 $30,000 to Cecere. On November 21, 1968, at 11:30 A.M., Lenny Banks, an employee of Saperstein, delivered $2,000 to Cecere following a demand from Cecere to Saperstein that such payment must be made on that day. Petitioner Joan Cecere had no knowledge of the loan transactions between Saperstein and Cecere and his partners. Nevertheless, both Petitioners Daniel and Joan Cecere knew in 1967 and 1968 that interest received constitutes taxable income in the year of receipt. On or about November 21, 1968, Saperstein wrote two letters to the Federal Bureau of Investigation. The letters pleaded for the protection of the Federal Bureau of Investigation. Saperstein died on November 26, 1968. Petitioner Joan Cecere was the principal stockholder of the Berkeley Bar during 1967 and 1968. The other stockholders were Alexander Cecere and a Mr. Aquino. Joan Cecere received salary income for both years from Berkeley Bar which was reported on the 1967 Federal income tax return and the 1968 joint Federal income tax return but she performed no services for Berkeley Bar during 1967 and 1968 and only visited the bar 2 or 3 times during the years in question. Nevertheless, she directed Mr. Aquino, *7 the manager, to deposit each days receipts to a designated bank account. A Mr. Rocco Noschese was employed to clean the bar and kitchen at the Berkeley Bar commencing in 1966 and continuing through 1967 and 1968. He worked seven days each week from 6:30 A.M. until 12:30 P.M. when the manager arrived to open the bar for business. In November 1968, Lenny Banks came to the bar to meet Ray DeCarlo and after waiting for some time he handed an envelope to Noschese and directed him to deliver it to DeCarlo when he arrived. Noschese complied by delivery of the envelope on the same day without examination of its contents. Thereafter, Banks made similar weekly deliveries of the envelopes and DeCarlo picked them up on the same dates they were delivered by Banks to Noschese. DeCarlo did not exhibit the contents of the envelopes to Noschese but on one occasion Noschese heard DeCarlo counting the contents. In November 1968, the deliveries of envelopes by Banks ceased. The return for 1967 did not bear the signature of Joan Cecere. In the caption block which provides, "First name and initial (If joint return, use first names and middle initials of both)" the names "Daniel and Joan" appear. The *8 social security numbers of both appear on the return. Both spouses are claimed as exemptions and all of their children are claimed as dependents. Form W-2 reporting the income of Joan Cecere from the Berkeley Bar and the tax withheld was attached to the return. The rental income reported was received from property jointly owned by Daniel and Joan Cecere. Joan Cecere knew that her income from the Berkeley Bar was taxable and she filed no separate return for 1967. Joan Cecere filed joint returns with Daniel Cecere for the taxable years 1968, 1969 and 1970, all of which she signed. They relied upon an accountant to prepare their Federal income tax returns. The 1967 income tax return discloses the following sources and amounts of gross income and net income: Sources
Gross Income
Net Income
Berkeley Bar (Joan Cecere)
$10,400.00
$10,400.00
One Hour Martinizing
19,354.00
7,400.00
Mortgage interest
460.32
460.32
Income from rent
3,420.00
1,476.52
TOTAL
$33,634.32
$19,736.84
On their joint return for the taxable year 1968, petitioners reported gross income of $22,271.80. The Commissioner, in his statutory notice of deficiency mailed April 4, 1972, determined *9 that petitioners received and failed to report interest income on indebtedness from Louis Saperstein in the amount of $29,900 (one-third of $89,700) and $27,941 (one-third of $83,825) for the taxable years 1967 and 1968, respectively. He further determined that the failure to report such income was fraudulent. Other adjustments made by the Commissioner have been conceded by the parties. In their reply, petitioners claim that they are entitled to a bad debt deduction in the taxable year 1968 due to the worthlessness of the Saperstein debt. ULTIMATE FINDINGS OF FACT 1. Petitioner Daniel Cecere received interest income in the taxable years 1967 and 1968 in the amounts of $29,900 and $27,941 which he failed to report on his Federal income tax returns for those years with the intent to evade tax within the meaning of section 6653(b) of the Internal Revenue Code. 2. Petitioners Daniel Cecere and Joan Cecere filed a joint Federal income tax return for the taxable year 1967. 3. Petitioner Joan Cecere is not an "innocent spouse" with respect to the Federal income tax returns for the taxable years 1967 and 1968 within the meaning of section 6013(e) of the Code. *10 4. Petitioners sustained no loss from partial or complete worthlessness of a debt from Louis Saperstein. OPINION The adjustments made by the Commissioner in his statutory notice of deficiency which give rise to the issues presented consist of unreported interest income received from Louis Saperstein in 1967 and 1968. The Commissioner determined that Petitioner Daniel Cecere, as a one-third partner, received $29,900 in 1967 and $27,941 in 1968 of such income and his failure to report it on his income tax returns was coupled with the intent to evade tax. Respondent concedes that Petitioner Joan Cecere possessed no such fraudulent intent. Assessment of additional tax for 1967 is barred unless the Commissioner can establish fraud or an omission of income in excess of 25 percent of the income reported. Assessment of additional tax for 1968 is not barred by the statute of limitations. Petitioners contend that the return for 1967 was not a joint return because it was not signed by Joan Cecere and that Joan Cecere is not liable for the deficiencies in tax or fraud penalty for 1967 or 1968 because she qualified as an "innocent spouse" under the provisions of section 6013(e). In order *11 to find any deficiency in tax or penalty for 1967 against either petitioner, respondent must prove fraud or a 25 percent omission from income. The issue of fraud is one of fact to be determined upon a consideration of the entire record. William G. Stratton,54 T.C. 255 (1970). The burden of proving fraud under section 6653(b) is upon respondent. Sec. 7454, Internal Revenue Code of 1954. Fraud is never presumed. It must be affirmatively established by clear and convincing evidence. Anson Beaver,55 T.C. 85 (1970); Rule 142, Tax Court Rules of Practice and Procedure.Direct evidence of fraudulent intent is seldom available and whether it exists must be determined from the conduct of the taxpayer and the surrounding circumstances. The Commissioner, in order to prove fraud, must show that Daniel Cecere received and failed to report income with the intent to evade tax. Daniel Cecere, in his reply to respondent's answer filed herein, admitted lending money to Saperstein in 1967 and 1968 and admitted receiving weekly payments from Saperstein but alleged that the payments were principal, not interest. The respondent candidly admits *12 in his brief that the only record of the loan transaction is contained in two handwritten letters which Saperstein wrote to the Federal Bureau of Investigation on November 21, 1968, shortly before he died. The letters were admitted in the criminal trial against Cecere, DeCarlo and Polverino for the limited purpose of showing the state of mind of Saperstein and the Court of Appeals held that the trial court did not err in admitting one of the letters for such a limited purpose. United States v. DeCarlo,458 F.2d 358 (3d Cir. 1972). The letters were not admitted in the criminal trial to prove the truth of the statements contained in the letters. In the trial before us, the respondent offered the letters to prove the terms of the loan from Cecere to Saperstein and petitioners objected on the grounds that such letters were hearsay. Respondent countered with the argument that they were declarations against interest by reason of acknowledging the existence of a debt and thus were admissible under that exception to the hearsay rule. We admitted the letters in evidence for the limited purpose of showing the details of the loans between Saperstein and Cecere, including any *13 repayments of the loans. The complete letters are as follows: Federal Bureau of Investigation, Newark, NJ November 21, 1968 Gentlemen: I am writing you, maybe others can be helped by my plight. To date, I am indebted to Ray )Gyp) DeCarlo, Joe Polverino (known as Joe the Indian) and Daniel Cecere (known as Red Cecere), the total due these three is $115,000 on which I was charged and paid 1-1/2% interest per week, amounting to $1725 per week; the amount of $1725 was delivered weekly to Red Cecere at the Berkeley Bar. On September 13, 1968 I was severely beaten at a place in the rear of Weiland's Restaurant, Route 22, DeCarlo's headquarters--I was then told and given 3 months until December 13, 1968 to pay the entire accumulated amount of $115,000--the interest was then raised to $2000 per week which was delivered to Cecere every Thursday at the Berkeley Bar in Orange, N.J. This was delivered by Lenny Banks, my employee. On Nov. 14, 1968 I cashed 2 checks totaling $31,100 at Essex County State Bank and personally delivered to Cecere $30,000--under threat of death--Cecere, DeCarlo & Polverino also stated many times my wife and son would be maimed or killed-- Please protect my *14 family--I am sure they mean to carry out this threat-- Last night from my home, I called DeCarlo at the Harbor Island Spa in Florida, and pleaded for time but to no avail, over the phone DeCarlo stated unless further monies was [sic] paid the threats would be carried out-- Today, Lenny Banks delivered to Cecere $2000 at 11:30 am--Cecere called by phone while I was in Staten Island & I had to send this money today. [signed] Louis B. Saperstein Federal Bureau of Investigation, Newark, NJ November 21, 1968 Gentlemen: This is another Shylock deal with Ray (Gyp) DeCarlo and Peter Landesco (owner of the Living Room -- East Orange). On this accumulated loan the balance now due is $105,000 on which I was paying $1575 per week interest, the rate being 1-1/2% per week. Ray DeCarlo & Peter Landesco were partners in this deal--besides the $1575 per week, I had to pay Ray DeCarlo $300 per week protection--when I was given the severe beating 9/12/68 the interest was reduced to $1000 per week plus $300 per week protection, making a total of $1300 per week. This was delivered to Landesco every Thursday by employee Lenny Banks at the Living Room, Orange, N.J. (Today Lenny Banks delivered *15 $1300 to Landesco plus $2000 to Cecere). The total I was paying these 4, namely DeCarlo, Landesco, Cecere and Polverino was $3300 per week interest and protection. The $115,000 and the $105,000 accumulated amounts total $220,000--less $30,000 paid to Cecere, interest remains at $2000 per week for Cecere-- Landesco & DeCarlo on their loans have been receiving interest for 5 years--plus protection of $300 per week. Cecere, DeCarlo & Polverino have been receiving interest for 2 years-- I am enclosing a memo in Landesco [sic] handwriting on a loan of $10,000 [signed] Louis B. Saperstein The admissibility at the time of trial was decided without applying the Federal Rules of Evidence because Public Law 93-12, 87 Statutes 9, provided that the rules would not be effective until approved by Congress and the trial was held before Congress adopted the rules. Although the Federal Rules of Evidence are now law and apply to all proceedings pending in the Tax Court, by their terms they are not applicable if not feasible or they would work injustice. Because they were not applicable at the time of trial and the admissibility of evidence was ruled upon without applying such rules, we decline *16 to apply them now in this case. Neither party argues that the Federal Rules of Evidence apply. The admissibility of evidence in the Tax Court is governed by the rules of evidence applicable to trials without a jury in the District of Columbia. Sec. 7453, Internal Revenue Code; Rule 143(a), Tax Court Rules of Practice and Procedure.
The leading case applying the declaration against interest exception to the hearsay rule in the District of Columbia is Gichner v. Antonio Troiano Tile and Marble Co.,410 F.2d 238 (D.C. Cir. 1968). In that case, the Court described a declaration against interest as a traditional exception to the hearsay rule, well-recognized in the District of Columbia and it set forth the requirements as follows at page 241: The requirements for a statement coming within this exception were clearly stated in Johnson v. Sleizer,268 Minn. 421, 129 N.W. 2d 761, 763 (1946). The court noted that such declarations are admissible when they 'concern a matter of which the declarant was personally cognizant, were against his pecuniary and proprietary interest, and were made with no probable motive to falsify.' The *17 Johnson court went on to detail a fourth requirement--that the declarant be unavailable to testify at trial. Petitioners do not deny that Saperstein was unavailable nor that he had personal knowledge of the matters contained in the letters. They base their objections on admissibility on the grounds that the matters to which the declarations relate are not in issue in our proceeding and that the Saperstein letters do not possess sufficient trustworthiness. Petitioners ask us to apply the declaration against interest too strictly. "The clearest example of a declaration against pecuniary interest is an acknowledgment that the declarant is indebted." McCormick, Law of Evidence, sec. 277 (2d ed. E. Cleary 1972). If the acknowledgment of the existence of a debt were admissible as a declaration against interest only in actions between the parties to the debt, or parties in privity to them, it would restrict admissibility to admissions of parties. Declarations against interest and admissions of parties are separate and distinct exceptions to the hearsay rule. McCormick, Law of Evidence, sec. 262 (2d ed. E. Cleary 1972). We recognize that petitioners concede the existence of a debt *18 from Saperstein to Cecere but the terms or repayment of the debt cannot otherwise be proved. The terms and payments on the debt are of paramount importance in this case and the Saperstein letters are obviously vitally related to such facts. Petitioners' objections as to the lack of trust-worthiness of the Saperstein letters characterizes them as "squeal letters" to the Federal Bureau of Investigation and petitioners argue that they are self-serving because they accuse Daniel Cecere of illegal acts. Trustworthiness is technically not the test in the District of Columbia. The test is whether the declarant made the statement with no probable motive to falsify. Gichner v. Antonio Triano Tile and Marble Co.,supra.The motive to falsify or misrepresent is described as follows in 5 Wigmore, Evidence, sec. 1464 (Chadbourn rev. 1974): It has sometimes been said, loosely and in analogy to some other hearsay exceptions, that there must be no motive to misrepresent-- this being put as an additional requirement. But there is no such additional requirement. The real object of this mode of statement is to furnish a test for a not uncommon situation--the situation *19 in which, along with the disserving interest, there is also a more or less palpable interest to be served by the fact. The real question is: Shall we attempt to strike a balance between the two opposing interests and admit the statement only if on the whole the disserving interest preponderates in probable influence? Or shall we regard the disserving interest as sufficient to admit, and leave the other merely to affect the credit of the statement? The former alternative has been generally followed by the courts. * * * [Fn. ref. omitted.] [5 Wigmore at 338] We conclude that under either test described by Wigmore there was little motive on the part of Saperstein to misrepresent the terms and repayment of the loan. Daniel Cecere admits the loan and receipt of weekly payments. The specificity with which Saperstein describes the debt convinces us that he did not misrepresent the terms or repayments of the debt. Saperstein's letters were admitted in the criminal trial of Cecere and DeCarlo, so petitioners obviously could expect them to be offered in the instant case. If Daniel Cecere desired to dispute the statements made in the letters, he had ample opportunity to do so. On June 13, 1973, we *20 granted petitioners' motion for continuance and a change of place of trial from Newark, New Jersey, to Atlanta, Georgia, to enable Petitioner Daniel Cecere to testify in this trial. On September 27, 1973, we granted petitioners' motion to change the place of trial from Atlanta to Newark on the grounds that petitioners did not intend to rely on the testimony of Petitioner Daniel Cecere. In the pleadings herein, "Petitioner Daniel Cecere admits the loan to Louis B. Saperstein, but denies that the weekly payments received constituted income, alleging that said payments constituted repayment of the loan." In petitioners' opening brief, "Petitioner Daniel Cecere admits that he participated in a joint venture whereby monies were loaned to a certain Louis Saperstein." To allow the declarations against interest of Saperstein wherein he admits the debt and its terms and repayment but exclude the remaining contents of the letters is not unlike admitting in evidence admissions of the petitioner but excluding self-serving statements. The Court of Appeals for the Fifth Circuit approved, with the following language, our holding in such a situation in Stein v. Commissioner,322 F.2d 78, 82 (5th Cir. 1963), *21 affg. a Memorandum Opinion of this Court: It was not error for the Tax Court to accept the entries in Stein's notebooks that showed daily net gambling winnings and fail to give credence to the entries in said notebooks that showed daily net losses. The entries showing daily net gambling winnings were in the nature of declarations against interest while the entries showing daily net losses were in the nature of self serving declarations. * * * Accordingly, we reaffirm our holding at the time of trial as to the admissibility of the Saperstein letters for a limited purpose and we have found the following as facts from such letters: (1) As of November 21, 1968, Saperstein was indebted $115,000 to Ray DeCarlo, Joe Polverino and Daniel Cecere; (2) He paid interest at the rate of 1-1/2 percent per week or $1,725 per week; (3) That amount was delivered weekly to Cecere at the Berkeley Bar by Saperstein's employee, Lenny Banks; (4) On September 13, 1968, the lenders gave Saperstein 3 months to pay off the loan and raised the interest to $2,000 per week; (5) On November 14, 1968, Saperstein delivered $30,000 to Cecere; (6) Lenny Banks delivered $2,000 to Cecere on November 21, 1968, at *22 11:30 a.m. after Cecere called Saperstein and demanded that payment on that day; (7) Saperstein paid interest to Cecere, DeCarlo and Polverino for two years prior to November 21, 1968. The statements in Saperstein's letters are corroborated to a great extent by the testimony of a Mr. Rocco Noschese who worked at the Berkeley Bar. Noschese testified that he was employed as a cleanup man beginning in 1966 and continued in such employment through 1968. He arrived for work at 6:30 a.m. each day and worked until 12:30 p.m. when the manager arrived to open the bar for business. In November 1968, a Mr. Lenny Banks came to the bar to meet Ray DeCarlo and after waiting for some time he handed an envelope to Noschese and directed him to deliver it to DeCarlo when he arrived. Noschese complied by delivery of the envelope without examination of its contents. Thereafter, Banks made similar weekly deliveries of the envelopes and DeCarlo picked them up on the same dates they were delivered by Banks to Noschese. DeCarlo did not exhibit the contents of the envelopes to Noschese but on one occasion Noschese heard DeCarlo counting the contents. In November 1968, the deliveries of envelopes by Banks *23 ceased. Althouth Saperstein recited in his letters that the payments were delivered by Banks to Cecere and Noschese testified that Banks always gave the envelopes to him for DeCarlo and never gave them to Cecere, there is no dispute that Cecere and DeCarlo were partners in the loan to Saperstein and Saperstein would, therefore, consider a payment to DeCarlo as a payment to Cecere. The fact that Noschese only began receiving envelopes in September 1968 does not disprove Saperstein's statement in his letters that payments were made in 1967. The mode or place of payment likely was changed or the payments were made when Noschese was not on duty. Cecere's admission of receiving weekly payments in the pleadings supports a finding of payments received in 1967. Petitioners, in their reply, claim a bad debt deduction for the year 1968 by reason of the worthlessness of the Saperstein note due to Saperstein's death but they never alleged or attempted to prove the unpaid balance of the debt at Saperstein's death. If petitioners were serious about the bad debt deduction, they would have attempted to prove the amount of the unpaid balance and Petitioner Daniel Cecere was in a position to offer *24 such proof. Petitioners have the burden of proving the bad debt and their failure to offer such proof leads to the conclusion that the proof, if offered, would be unfavorable. Wichita Terminal Elevator Co.,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); Samuel Pollock,47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968); Stoumen v. Commissioner,208 F.2d 903 (3d Cir. 1953), affg. a Memorandum Opinion of this Court. "The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse. Clifton v. United States,4 How. 242, 247. Silence then becomes evidence of the most convincing character." Interstate Circuit v. United States,306 U.S. 208, 226 (1939). After considering the entire record, we are convinced that Petitioner Daniel Cecere received interest income from Louis B. Saperstein in each of the taxable years 1967 and 1968 which he failed to report on his income tax returns for those years and such failure was with the intent to evade tax. Our finding of fraud for the taxable year *25 1967 extends the period of limitations on assessment of additional tax for that year indefinitely. Sec. 6501(c), I.R.C. 1954. Assessment of additional tax for the taxable year 1967 is, therefore, not barred by the running of the period of limitations on assessment. Petitioners contend that the return for 1967, not signed by Petitioner Joan Cecere, was not a joint return and they also contend that Joan Cecere qualifies as an "innocent spouse" under section 6013(e) of the Code and is, therefore, not liable for the deficiencies in tax or fraud penalty for 1967 or 1968. The two contentions are inconsistent. In order to qualify as an "innocent spouse" the return must be a joint return. Sec. 6013(e)(1)(A), I.R.C. 1954. Mary Lou Galliher,62 T.C. 760 (1974), affd. in unpublished opinion (5th Cir., Apr. 24, 1975). The only element missing from the 1967 return which would conclusively establish that the return was joint was the signature of Joan Cecere. The return bore both names in the caption block which designates the return to be a joint return for married persons. Both spouses were claimed as exemptions and all children were claimed as dependents. Joan Cecere's *26 income from the Berkeley Bar was reported on the return and the form W-2 reporting her earnings and withholding tax from her earnings was attached. Income and expenses from rental property jointly owned were included on the return. She testified that she knew such earnings represented taxable income. She did not testify that she filed a separate return for that year. She did not testify that she had ever filed a separate return. She filed a joint return with her husband, Daniel Cecere, for 1968, 1969 and 1970, all of which she signed. She and her husband customarily relied upon an accountant to prepare the income tax returns. An income tax return need not be signed by both spouses to constitute a joint return if the spouses intend it to be a joint return. W. L. Kann,18 T.C. 1032, 1044 (1952), affd. 210 F.2d 247 (3d Cir. 1953), cert. denied 347 U.S. 967 (1954). Whether the parties intend it to be a joint return is a question of fact. Although it is not conclusive, the inclusion in the return of income and deductions of the wife has been regarded as a factor supporting the conclusion that the return was the joint return of the husband and *27 wife. Irving S. Federbush,34 T.C. 740, 756 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963). We conclude from all the facts that Joan Cecere intended that the 1967 return be a joint return with her husband, Daniel Cecere. Estate of Ralph B. Campbell,56 T.C. 1 (1971). We believe Joan Cecere's failure to sign the return was an oversight and raising the issue for the first time at trial was an after-thought. Petitioners cite no cases in either of their briefs to support their position. Having held that the return for 1967 was joint, we must decide whether Joan Cecere qualifies as an "innocent spouse" under section 6013(e). To qualify as an "innocent spouse" Joan Cecere must satisfy three criteria. She must establish (1) that she filed a joint return from which income attributable to her husband and in excess of 25 percent of the gross income stated in the return was omitted; (2) that she neither knew nor had reason to know of the omission; and (3) that under all the facts and circumstances (including whether she benefited significantly from the omitted income), it would be inequitable to hold her liable for the tax on the omitted *28 income and the fraud penalty. Mary Lou Galliher,supra.
We have found that there were omissions of interest income from the returns for 1967 and 1968 in the respective amounts of $29,900 and $27,941. These amounts exceed 25 percent of the gross income reported for those years. Respondent, in his opening brief, argues that petitioners have failed to prove the 25 percent omission for 1968 but does not explain wherein the proof is faulty. It is clear to us from viewing the entire record that petitioners have proved a 25 percent omission for the taxable year 1968. We believe the testimony of Joan Cecere that she did not know of the omission of income. We believe that she had no knowledge of her husband's loan activities with Saperstein. Based upon her testimony as to her activities in the taxable years 1967 and 1968, including the standard of living enjoyed by petitioners, we conclude that Joan Cecere had no reason to suspect or know of the omission. Her testimony was forthright and unchallenged. Respondent's argument as to her knowledge or suspicion of the omission is weak and unconvincing. We hold, therefore, that Joan Cecere has satisfied the second requirement *29 of qualifying as an "innocent spouse." The final requirement is that Joan Cecere did not benefit significantly from the omission of income so it would be inequitable to hold her liable for the tax and fraud penalty. Petitioners have failed to show that she did not benefit significantly, instead they merely argue that money used as a down payment to purchase "Silver Bay real estate" could be assumed to have come from an accumulation from prior years. The burden of proof is on petitioners to establish that it came from accumulations if they hope to prevail. Petitioners argue that the property was purchased by them as tenants by the entirety and payments were made on the loan in 1967 and 1968. Petitioners argue further that if Joan Cecere predeceases Daniel Cecere her interest will terminate. Such an argument is absurd. Obviously, the converse is true: if Daniel Cecere predeceases Joan Cecere, she takes all. Petitioners failed to establish how substantial the Silver Bay property is. Although there was testimony as to its acquisition and the payments made on the loan, neither petitioners nor respondent has requested us to find any facts relating to that property. Our rules provide *30 that the parties shall propose findings of fact in the form of numbered statements referring to the record to support such request. Rule 151(e), Tax Court Rules of Practice and Procedure. Petitioners did not comply with the rule and petitioners have the burden of proof. We decline to ferret out the facts to prove petitioners' contention that Joan Cecere did not benefit substantially fromthe omission. We do not, therefore, find any facts relating to the acquisition of the Silver Bay property. Accordingly, we hold that petitioners have failed to prove that Joan Cecere qualifies under the third requirement of section 6013(e) and it follows that she is not relieved from liability as an "innocent spouse." There is no merit to petitioners' claim for a bad debt deduction in 1968 by reason of the death of Saperstein. As explained above, the record is devoid of evidence of the unpaid balance. Moreover, there is no evidence of the lack of collectibility. Petitioners have failed to sustain their burden of proof and no deduction is allowable. Decision will be entered under Rule 155.
Footnotes
1. All Code section references are to the Internal Revenue Code of 1954, as amended.↩