

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-2006

# State Farm Fire v. Holmes Prod

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4532

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"State Farm Fire v. Holmes Prod" (2006). *2006 Decisions.* Paper 1698.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1698

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-4532

———————

STATE FARM FIRE AND CASUALTY COMPANY,
as subrogee of ROCKY MOUNTAIN and SUZANNE MOUNTAIN

<u>Appellant</u>

v.

HOLMES PRODUCTS; J.C. PENNEY COMPANY, INC.
————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-04790)
Magistrate Judge:  Honorable Ann M. Donio

————————

Argued January 17, 2006
Before:  BARRY, AMBRO and ALDISERT, <u>Circuit Judges</u>.

(Filed January 31, 2006)

Norman W. Briggs, Esq. (Argued)
Michelle L. Weckerly, Esq.
Frey, Petrakis, Deeb, Blum, Briggs & Mitts
1601 Market Street, 26th Floor
Philadelphia, PA 19103
    *Attorneys for Appellant*

Judson B. Barrett, Esq. (Argued)
Barrett & Pavluk LLC
1602 Lawrence Avenue
Ocean Park Professional Building, Suite 109
Ocean, NJ 07712
     *Attorney for Appellee*s

_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

Plaintiff State Farm Fire & Casualty Co., as subrogee of Rocky and Suzanne Mountain, appeals from the disqualification of its primary expert witness following a pre-trial hearing held pursuant to the teachings of Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and a subsequent entry of summary judgment in favor of Defendants Holmes Products and J.C. Penney Co., Inc.  Defendants are the distributor and seller, respectively, of a free-standing torchiere-style halogen floor lamp that State Farm alleges to be the cause of a fire that destroyed the Mountains' home.  State Farm contends that a window curtain on the west wall of the living room of the Mountain residence caught fire by coming into contact with the halogen lamp's bulb.  We must decide two things: (1) whether the District Court properly excluded the testimony of State Farm's expert on the issue of causation; and (2) if so, whether the absence of this expert testimony regarding causation warranted summary judgment in favor of Defendants.  We have jurisdiction to review this appeal pursuant to 28 U.S.C. § 1291.  Because we answer both questions in the affirmative, we will affirm the decision of the District Court.

2

I.

The parties are familiar with the facts and the proceedings in the District Court, so we will only briefly revisit them here. On April 5, 1999, the home of Rocky and Suzanne Mountain was destroyed in a fire. At the time of the fire, the home was insured by State Farm. The Mountains thereafter filed a claim pursuant to that policy, for which they received $197,654.92, and State Farm was subrogated to the rights of the Mountains. After investigating the claim, State Farm came to the conclusion that the fire was caused by a torchiere-style halogen lamp sold by J.C. Penney and distributed by Holmes Products.

This halogen lamp had been subject to a Consumer Product Safety Commission ("CPSC") recall in August 1997 because it lacked a wire or glass guard. According to the CPSC, the halogen lamp bulb could reach extremely high temperatures capable of igniting curtains, clothing or other flammable materials. As a result of the recall, J.C. Penney issued a safety notice, to be sent to customers, that free safety guards were available for halogen lamps sold prior to August 1997. It also notified all its stores of the recall. The Mountains purchased their halogen lamp from J.C. Penney in February 1998. It is undisputed that the lamp did not have a wire or glass guard and that the Mountains were never provided with the safety notice.

On April 5, 1999, the day of the fire, the Mountains had left their home at approximately 6:45 a.m. with the halogen lamp still on. Around 9:20 a.m., the Bradford

3

Township Volunteer Fire Department was called to combat a fire at the Mountains' residence. After the fire company extinguished the fire, the fire chief inspected the scene and determined that the fire originated in the area of the living room where the halogen lamp was located. He theorized that it was caused by either a short in the lamp's electrical cord or the draperies coming into contact with the lamp.

State Farm's expert, Brian Gray, a fire investigator, subsequently conducted an investigation of the fire. He found the following: (1) the fire originated in the western part of the living room based on fire pattern analysis; (2) this was the area where the lamp was located; (3) there was no defined ring on the carpet where the lamp would have stood throughout the fire, indicating that it had fallen over; (4) there were no signs of electrical arcing on the halogen lamp and the insulation on the lamp's external power cords remained intact, indicating that the fire was not electrical in nature; (5) the damage to the lamp's wiring was restricted to that section inside the poles, with the heaviest amount of damage sustained at the top of the lamp and around the halogen bulb, indicating that it was subject to higher heat; (6) the halogen bulb could reach temperatures high enough to ignite flammable material located within one or two inches of the lamp's bulb; and (7) the room's heavy cotton draperies were located one and a half to two feet away from the lamp. The evidence also showed that the lamp was approximately six feet tall, that the draperies hung from a height of approximately nine feet, and that on the morning of the fire no windows or doors were open in the home.

4

Based on the above information, Gray eliminated all other potential causes of the fire and concluded that it was caused by the draperies coming into contact with the defective lamp:

> Well, we know that the lamp was close to the vicinity of the draperies. We know that the lamp was always on, and by doing a process of elimination in this area of fire origin and, for example, eliminating all other igniting sources, the only item relative to causation of the fire was the halogen lamp; the only ignitable materials that were in that area were the draperies.

(App. at 78.)

As to how the lamp came in contact with the draperies, Gray then hypothesized that the Mountains' large boxer dog, who perished in the fire, might have accidentally pulled the window draperies over the lamp or knocked or tilted the lamp into the draperies in an effort to investigate the tree trimming that was occurring in the home's vicinity that day. Gray did concede, however, that the lamp may have remained standing until the firefighters arrived and began their fire suppression efforts. In addition, another of State Farm's experts, Matthew Balmer, testified that, in his opinion, the lamp stayed standing throughout the fire.

On July 29, 2004, a Daubert hearing was held to determine the admissibility of Gray's testimony. After considering written submissions, the District Court, Magistrate Judge Donio presiding, granted Defendants' motion to exclude Gray's expert testimony. The Court found it significant that neither Gray nor Balmer could definitively state that the lamp was knocked over before the fire began and that there was no factual support for

5

Gray's hypothesis that the Mountains' dog caused the fire. It therefore concluded that Gray's testimony did not satisfy Daubert's "fit" requirement because his conclusion on causation was based on assumptions and was not supported by any methodology. See Daubert, 509 U.S. at 591. The Court then excluded Gray's testimony on the issue of causation.

On November 3, 2004, the District Court granted summary judgment in favor of Defendants, concluding that State Farm had not presented any evidence on the issue of causation sufficient to show that the halogen lamp was the proximate cause of the fire. The Court stated that "[a]bsent Gray's causation testimony, Plaintiff does not have sufficient evidence to create an issue of fact for trial." More specifically, the Court found that State Farm failed to present sufficient facts indicating how the defective halogen lamp, which could only ignite materials located within one or two inches of the lamp's bulb, could have ignited the living room draperies that were one and one half to two feet from the lamp. Because of the lack of evidence "bridging the gap" from the draperies to the defective halogen lamp, the Court concluded that "a jury could only speculate as to whether the fire was caused by the lamp." The Court found this speculation to be impermissible and accordingly granted Defendants' motion for summary judgment.

II.

We review an order granting summary judgment de novo, and we evaluate the evidence in the light most favorable to the nonmoving party. Antol v. Perry, 82 F.3d

6

1291, 1294-1295 (3d Cir. 1996).  We review a district court's ruling as to the

admissibility of evidence under an abuse of discretion standard where the question

presented involves the application of the Federal Rules of Evidence.  Affiliated Mfrs.,

Inc. v. Aluminum Co. of Am., 56 F.3d 521, 525 (3d Cir. 1995).  Pennsylvania's

substantive law on strict products liability applies to this appeal.  See Van Dusen v.

Barrack, 376 U.S. 612, 639 (1964); Austin v. Dionne, 909 F. Supp. 271, 274 (E.D. Pa.

1995).[1]

## III.

We conclude that the Court acted within its broad discretion in disallowing the

expert testimony of Gray on the topic of causation because his testimony did not satisfy

the requirements of Daubert and Rule 702 of the Federal Rules of Evidence.  First, Gray's

testimony as to the actions of the Mountains' dog was speculative insofar as this theory

was not supported by any scientific analysis or methodology that indicated that the dog in

fact brought the draperies into contact with the halogen lamp.  In interpreting Daubert,

---

[1]Although this appeal arose from the District of New Jersey, we apply
Pennsylvania law to this dispute because the action was initially filed in the Western
District of Pennsylvania, but was later transferred to New Jersey for the convenience of
the parties pursuant to 28 U.S.C. § 1404.  Because of this transfer, the transferee court
must apply the choice of law rules of the transferor court, here Pennsylvania.  See Van
Dusen, 376 U.S. at 639.  Under Pennsylvania law, because there is no conflict between
the laws of other states that may have an interest in the current action and because the
governmental interests of those states would not be impaired were they not applied, a
court shall apply the law of the forum state, here Pennsylvania, pursuant to Van Dusen's
precepts.  See Austin, 909 F. Supp. at 274.

7

this Court has stated that "that the language of Rule 702 requiring the expert to testify to scientific knowledge means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994). Accordingly, we agree with the District Court that Gray's testimony on the behavior of the Mountains' dog was not supported by any scientific analysis or methodology; it was merely unsupported speculation and was therefore properly excluded.

Second, in the absence of any evidence that could lead a jury to reasonably conclude that the draperies' contact with the halogen lamp was the probable cause of the fire, the Court did not exceed the permissible bounds of its discretion by precluding the remainder of Gray's testimony on causation. Without a causal link between the fire, the location of the halogen lamp, and the location of the heavy cotton draperies, the remainder of Gray's testimony would not have been helpful to the trier of fact for the purposes of determining causation. Unlike the two cases that State Farm cites addressing similar exclusions of expert testimony, Breidor v. Sears, Roebuck & Co., 722 F.2d 1134 (3d Cir. 1983), and Gichner v. Antonio Troiano Tile & Marble Co., 410 F.2d 238 (D.C. Cir 1969), the Court here did not err in excluding Gray's testimony because he was only able to state how the fire started in terms of mere possibilities, and this causal supposition was not sufficiently supported by evidence in the record. See Breidor, 722 F.2d at 1138 ("Where a fire investigator identifies the cause of fire in terms of probabilities (as

8

opposed to mere possibilities) by eliminating all but one reasonable potential cause, such testimony is highly probative.") (citing Gichner, 410 F.2d at 247).

Although Gray eliminated all but the draperies' contact with the halogen lamp as the possible source of the fire, his testimony lacks that logical indicia that would allow the trier of fact to conclude that the remaining *possibility* was in fact the *probable* source of the fire. Breidor, 722 F.2d at 1138-1139 ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge."); Gichner, 410 F.2d at 247. In the absence of testimony or evidence explaining how the draperies came into contact with the halogen lamp, a trier of fact could not be allowed to speculate that the Mountains' dog knocked the lamp into the curtains, especially when State Farm's experts were unable to conclusively state whether the lamp fell over before the fire began. See Flagiello v. Crilly, 187 A.2d 289, 291 (Pa. 1963) ("We have said many times that the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based.") (citation and quotations omitted). Although it is a close question, we conclude that the exclusion of the entirety of Gray's testimony was not an abuse of discretion because the Court could reasonably have concluded that his remaining non-speculative testimony did not constitute scientific

9

knowledge helpful for the purposes of determining causation.[2] See In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742 ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.") (citation and quotations omitted).

Having concluded that the District Court did not err in excluding Gray's testimony, we also conclude that it properly granted summary judgment in favor of Defendants. Under Pennsylvania law, causation is an essential element of a strict products liability claim, Wilson v. Vermont Castings, Inc., 170 F.3d 391, 396 (3d Cir. 1999), and State Farm, as plaintiff, has the burden of proving this essential element, Blancha v. Raymark Indus., 972 F.2d 507, 511 (3d Cir. 1992). Without evidence sufficient to create a material issue of fact regarding causation, a jury could only speculate as to whether the halogen lamp was indeed the cause of the fire. See Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 76 (3d Cir. 1996) (affirming a district court's order granting summary judgment where the plaintiff failed to present sufficient evidence on the element of causation). Accordingly, because State Farm has failed to present facts sufficient to establish the existence of an element essential to its case on which it would bear the burden of proof at

---

[2]Or, at most, the exclusion of this testimony was only harmless error in light of our conclusion that a trier of fact could only speculate as to how the draperies came into contact with the halogen lamp. See Becker v. ARCO Chem. Co., 207 F.3d 176, 180 (3d Cir. 2000) ("In reviewing evidentiary rulings, if we find nonconstitutional error in a civil suit, such error is harmless only 'if it is highly probable that the error did not affect the outcome of the case.'").

trial, the District Court properly entered summary judgment in favor of Defendants. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-323 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

V.

We have considered all contentions presented by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be affirmed.